# EXHIBIT G

JUL-12-2004  10:46    KHOFFHHN: BURGEEST & KIHH

POLICY NUMBER:
*874-91-08*

 American International Companies®

RENEWAL OF:
484-54-78

## Directors, Officers and Corporate Liability Insurance Policy

☐ AIU Insurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Penns.
☐ Granite State Insurance Company

☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pitts., PA®
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

**NOTICE:** EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**NOTICE:** THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

**NOTICE:** THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

### DECLARATIONS

ITEM 1.  NAMED CORPORATION: *WORLDCOM, INC.*

   MAILING ADDRESS:  *1133 19TH STREET*
   *WASHINGTON, DC 20036*

   STATE OF INCORPORATION OF THE NAMED CORPORATION:
   *Georgia*

ITEM 2.  SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Corporation

ITEM 3.  POLICY PERIOD:  From: *December 31, 2001*  To: *December 31, 2002*
   (12.01 A.M. standard time at the address stated in Item 1.)

ITEM 4.  LIMIT OF LIABILITY: _____*$15,000,000*_____
   aggregate for Coverages A and B combined (including Defense Costs)

280128
62334 (5/95)


EXHIBIT
*6*

ITEM 5.    RETENTION:

SECURITIES CLAIMS:

| | |
|---|---|
| Judgments & Settlements (all coverages) | None |
| Defense Costs (non-Indemnifiable Loss) | None |
| Defense Costs (Coverage B(I) and Indemnifiable Loss) | $5,000,000 |

for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under Clause 6 in certain circumstances)

OTHER CLAIMS:

| | |
|---|---|
| Judgments, Settlements and Defense Costs (non-Indemnifiable Loss) | None |
| Judgments, Settlements and Defense Costs (Indemnifiable Loss) | $5,000,000 |

for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts

ITEM 6.    CONTINUITY DATES:

| | |
|---|---|
| A. Coverages A and B(II): | August 9, 1991 |
| B. Coverage B(I): | June 1, 1995 |

C. Coverages A and B:
Outside Entity Coverage (Per Outside Entity)
See Endorsement # 27

ITEM 7.    PREMIUM:                                    $1,950,000

ITEM 8.    NAME AND ADDRESS OF INSURER ("Insurer"):
(This policy is issued only by the insurance company indicated below.)

National Union Fire Insurance Company of Pittsburgh, Pa.

175 Water Street

New York, NY 10038

280128
62334 (5/95)

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_                           _John Hogl_

SECRETARY                                     PRESIDENT

_signature_

AUTHORIZED REPRESENTATIVE

COUNTERSIGNATURE DATE                    COUNTERSIGNED AT

WILLIS CORROON CORP OF NY
7 HANOVER SQUARE
NEW YORK, NY 10004

280128

62334  (5/95)

JUL-12-2004  10:47    KAUFMAN, BORGEEST & RYAN.                         P.06

 *American International Companies*®

## DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the "Insurer", agrees as follows:

## 1. INSURING AGREEMENTS

### COVERAGE A: DIRECTORS AND OFFICERS INSURANCE

This policy shall pay the Loss of each and every Director or Officer of the Company arising from a Claim first made against the Directors or Officers during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, except when and to the extent that the Company has indemnified the Directors or Officers. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### COVERAGE B: CORPORATE LIABILITY INSURANCE

This policy shall pay the Loss of the Company arising from a:

      (i)    Securities Claim first made against the Company, or

      (ii)   Claim first made against the Directors or Officers,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Directors or Officers for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

62336 (5/95)                                      1

2. **DEFINITIONS**

(a) "Claim" means:

    (1)  a written demand for monetary or non-monetary relief; or
    (2)  a civil, criminal, or administrative proceeding for monetary or non-monetary relief which is commenced by:

        (i) service of a complaint or similar pleading; or
        (ii) return of an indictment (in the case of a criminal proceeding); or
        (iii) receipt or filing of a notice of charges.

The term "Claim" shall include a Securities Claim; provided, however, that with respect to Coverage B(i) only, Claim or Securities Claim shall not mean a criminal or administrative proceeding against the Company.

(b) "Company" means the Named Corporation designated in Item 1 of the Declarations and any Subsidiary thereof.

(c) "Continuity Date" means the date set forth in:

    (1)  Item 6A of the Declarations with respect to Coverages A and B (ii); or

    (2)  Item 6B of the Declarations with respect to Coverage B(i); or

    (3)  Item 6C of the Declarations with respect to Coverages A and B for a Claim against an Insured arising out of such Insured serving as a director, officer, trustee or governor of an Outside Entity.

(d) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of Officers or employees of the Company.

62335 (5/95)                                    2

(b)  "Director(s) or Officer(s)" or "Insured(s)" means:

(1)  with respect to Coverages A and B, (ii), any past, present or future duly elected or appointed directors or officers of the Company.  In the event the Named Corporation or a Subsidiary thereof operates outside the United States, then the terms "Director(s) or Officer(s)" or "Insured(s)" also mean those titles, positions or capacities in such foreign Named Corporation or Subsidiary which is equivalent to the position of Director(s) or Officer(s) in a corporation incorporated within the United States.  Coverage will automatically apply to all new Directors and Officers after the inception date of this policy;

(2)  with respect to Coverage B(i) only, the Company.

(f)  "Listed Event" means any of the following events:

(1)  any event for which the Company has reported or is required to report on Form 8-K filed with the Securities and Exchange Commission pursuant to the Securities Exchange Act of 1934; or

(2)  any restatement or correction of a Company financial statement contained in any document filed with the Securities and Exchange Commission; or

(3)  any statement or disclosure made by or on the behalf of the Company relating to a prior forecast, estimate or projection of the Company's earnings or sales made by or on behalf of the Company, which statement  or disclosure represents a greater than 15% change from such prior forecast, estimate or projection.

(g)  "Loss" means damages, judgments, settlements and Defense Costs; however, Loss shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amount for which the insureds are not financially liable or which are without legal recourse to the insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Further, with respect to Coverage B only, Loss shall not include damages, judgments or settlements arising out of a Claim alleging that the Company paid an inadequate or unfair price or consideration for the purchase of its own securities or the securities of a Subsidiary.

Notwithstanding the foregoing, with respect to Coverage B(i) only and subject to the other terms, conditions and exclusions of the policy, Loss shall include punitive damages (if insurable by law) imposed upon the Company.

(h)  "No Liability" means with respect to a Securities Claim made against the Insured(s): (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after exhaustion of all appeals. In no event shall the term "No Liability" apply to a Securities Claim made against an insured for which a settlement has occurred.

(i)  "Outside Entity" means:

(1)  a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended); or

(2)  any other corporation, partnership, joint venture or other organization listed by endorsement to this policy.

(j)  "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy; however, to the extent that coverage under this policy replaces coverage in other policies terminating at noon standard time on the inception date of such coverage hereunder, then such coverage as is provided by this policy shall not become effective until such other coverage has terminated.

(k)  "Securities Claim" means a Claim made against an Insured which alleges a violation of the Securities Act of 1933 or the Securities Exchange Act of 1934, rules or regulations promulgated thereunder, the securities laws of any state, or any foreign jurisdiction, and which alleges a Wrongful Act in connection with the claimant's purchase or sale of, or the offer to purchase or sell to the claimant, any securities of the Company, whether on the open market or arising from a public or private offering of securities by the Company.

(l)  "Subsidiary" means:

(1)  any corporation of which the Named Corporation owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries;

(2)  automatically any corporation whose assets total less than 10% of the total consolidated assets of the Company as of the inception date of this policy, which corporation becomes a Subsidiary during the Policy Period. The Named Corporation shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

62335 (5/95)                                      4

(3) any corporation which becomes a Subsidiary during the Policy Period (other than a corporation described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary the Named Corporation shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Corporation paying when due any additional premium required by the Insurer relating to such new Subsidiary.

A corporation becomes a Subsidiary when the Named Corporation owns more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries. A corporation ceases to be a Subsidiary when the Named Corporation ceases to own more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to any Claim made against a Subsidiary or any Director or Officer thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(m) "Wrongful Act" means:

(1) with respect to Individual Directors or Officers, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such, or any matter claimed against them solely by reason of their status as Directors or Officers of the Company, or any matter claimed against them arising out of their serving as a director, officer, trustee or governor of an Outside Entity in such capacities, but only if such service is at the specific written request or direction of the Company.

(2) with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company, but solely as respects a Securities Claim.

3.  **EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of deceased Directors or Officers, and the legal representatives of Directors or Officers in the event of incompetency, insolvency or bankruptcy, who were Directors or Officers at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual Director or Officer for all Claims arising solely out of his or her status as the spouse of an individual Director or Officer, including a Claim that seeks damages recoverable from marital community property, property jointly held by the individual Director or Officer and the spouse, or property transferred from the individual Director or Officer to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an individual Director or Officer, subject to the policy's terms, conditions and exclusions.

4.  **EXCLUSIONS**

The insurer shall not be liable to make any payment for Loss in connection with a Claim made against an insured:

(a)   arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an insured was not legally entitled;

(b)   arising out of, based upon or attributable to: (1) profits in fact made from the purchase or sale by an insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law; or (2) payments to an insured of any remuneration without the previous approval of the stockholders of the Company, which payment without such previous approval shall be held to have been illegal;

(c)   arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act;

The Wrongful Act of a Director or Officer shall not be imputed to any other Director or Officer for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c)

JUL-12-2004  10:48     KAUFMAN; BORGEEST & RYAN     P.12

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;

(f) alleging, arising out of, based upon or attributable to a Listed Event that occurs no later than 90 days subsequent to the Continuity Date; provided, however, that this exclusion shall only apply with respect to coverage which would have otherwise been afforded under Coverage B(i) of the policy;

(g) with respect to serving as a director, officer, trustee or governor of an Outside Entity, for any Wrongful Act occurring prior to the Continuity Date if the Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy;

(h) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of the Directors or Officers serving in their capacities as directors, officers, trustees or governors of any other entity other than the Company or an Outside Entity, or by reason of their status as directors, officers, trustees or governors of such other entity;

(i) which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company; provided, however, this exclusion shall not apply to a wrongful termination of employment Claim brought by a former employee other than a former employee who is or was a Director of the Company;

(j) for any Wrongful Act arising out of the Insured serving as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or by any director, officer, trustee or governor thereof; or which is brought by any security holder of the Outside Entity, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the Outside Entity, any director, officer, trustee or governor thereof, any Insured or the Company;

(k) for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from libel or slander or defamation or disparagement, or for injury from a violation of a person's right of privacy;

JUL-12-2004  10:48      KAUFMAN, BORGEEST & RYAN                    P.13

       (l)  alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

          (1)  the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

          (2)  any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants;

          including but not limited to a Claim alleging damage to the Company or its securities holders.

          Pollutants include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

       (m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state statutory law or common law.

**5.  LIMIT OF LIABILITY – (FOR ALL LOSS – INCLUDING DEFENSE COSTS)**

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, any Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 4 of the Declarations.

Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.

**6.  RETENTION CLAUSE**

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company and/or the Insureds and shall remain uninsured, with regard to all Loss under: (i) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Director(s) or Officer(s) ("Indemnifiable Loss"); or (ii) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

62335 (5/95)                                    8

Notwithstanding the foregoing, solely with respect to a Securities Claim under this policy, the Retention shall only apply to Defense Costs; provided, however, no Retention shall apply for a Securities Claim even as respects Defense Costs in the event of a determination of No Liability of all Insureds, and the Insurer shall thereupon reimburse such Defense Costs paid by the Insured.

7.    NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.
If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a)  The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

    (1)  any time during the Policy Period or during the Discovery Period (if applicable); or

    (2)  within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)  If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c)  If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons, and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

JUL-12-2004  10:46     KAUFFMAN BURGEESI & RTHN                    P.13

8.  DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under both Coverage A and Coverage B of this policy, except as hereinafter stated, the Insurer shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any Judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.

The Insurer shall have the right to effectively associate with the Company and the Insureds in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

The Insurer may make any settlement of any Claim it deems expedient with respect to any Insured subject to such Insured's written consent. If any Insured withholds consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer.

The Company is not covered in any respect under Coverage A; the Company is covered, subject to the policy's terms and conditions, only with respect to its indemnification of its Directors or Officers under Coverage B(II) as respects a Claim against such Directors and Officers, and subject to the policy's terms and conditions, under Coverage B(I) for a Securities Claim made against the Company. Accordingly, the Insurer has no obligation under this policy for Defense Costs incurred by, judgments against or settlements by the Company arising out of a Claim made against the Company other than a covered Securities Claim, or any obligation to pay Loss arising out of any legal liability that the Company has to the claimant except as respects a covered Securities Claim against the Company.

62335 (5/96)                          10

JUL 12 2004  16:46    KAUFMAN BORGEEST & RYAN    P.16

With respect to (i) Defense Costs jointly incurred by, (ii) any joint settlement made by, and/or (iii) any adjudicated judgment of joint and several liability against the Company and any Director or Officer, in connection with any Claim other than a Securities Claim, the Company and the Director(s) or Officer(s) and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between the Company and the Director(s) or Officer(s) and the Insurer, taking into account the relative legal and financial exposures of and the relative benefits obtained by the Directors and Officers and the Company. In the event that a determination as to the amount of Defense Costs to be advanced under the policy cannot be agreed to, then the Insurer shall advance such Defense Costs which the Insurer states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

9.   PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Only with respect to a Securities Claim:

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("Panel Counsel Firms"). The list provides the Insured a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any Securities Claim made against them.

The Insureds shall select a Panel Counsel Firm to defend a Securities Claim made against the Insureds in the jurisdiction in which the Securities Claim is brought. In the event a Securities Claim is brought in a jurisdiction not included on the list, the Insureds shall select a Panel Counsel Firm in the listed jurisdiction which is the nearest geographical jurisdiction to either where the Securities Claim is brought or where the corporate headquarters of the Named Corporation is located. In such instance the Insureds also may, with the consent of the Insurer, which consent shall not be unreasonably withheld, select a non-Panel Counsel Firm in the jurisdiction in which the Securities Claim is brought to function as "local counsel" on the Securities Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Securities Claim.

With the express prior written consent of the Insurer, an Insured may select a Panel Counsel Firm different from that selected by other insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Corporation. At the request of the Insured, the Insurer may in its discretion add to the attached list of Panel Counsel Firms for the purposes of defending a Securities Claim made against the Insured in any specified jurisdiction (including a jurisdiction not originally included in the Panel Counsel list) a Panel Counsel Firm not originally listed for such jurisdiction. The Insurer may in its discretion waive, in part or in whole, the provisions of this clause as respects a particular Securities Claim.

62335 (5/95)                                11

10. DISCOVERY CLAUSE

Except as Indicated below, if the Insurer or the Named Corporation shall cancel or refuse to renew this policy, the Named Corporation shall have the right, upon payment of an additional premium of 75% of the "full annual premium", to a period of one year following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said one year period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal.

In the event of a Transaction, as defined in Clause 12, the Named Corporation shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Corporation may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as Indicated in this paragraph.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

11. CANCELLATION CLAUSE

This policy may be canceled by the Named Corporation at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. This policy may also be canceled by or on behalf of the Insurer by delivering to the Named Corporation or by mailing to the Named Corporation, by registered, certified, or other first class mail, at the Named Corporation's address as shown In Item 1 of the Declarations, written notice stating when, not less than 60 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Named Corporation, the Insurer shall retain the customary short rate proportion of the premium herein.

If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium herein.

62336 (5/95)                                12

Payment or tender of any unearned premium by the insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12.  CHANGE IN CONTROL OF NAMED CORPORATION

If during the Policy Period:

    a. the Named Corporation shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

    b. any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of Directors of the Named Corporation, or acquires the voting rights of such amount of such securities;

        (either of the above events herein referred to as the "Transaction")

then this policy shall continue in full force and affect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction.  This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time.  The Named Corporation shall also have the right to an offer by the insurer of a Discovery Period described in Clause 10 of the policy.

The Named Corporation shall give the insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13.  SUBROGATION

In the event of any payment under this policy, the insurer shall be subrogated to the extent of such payment to all the Company's and the insureds' rights of recovery thereof, and the Company and the insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the insurer to effectively bring suit in the name of the Company and/or the insureds.  In no event, however, shall the insurer exercise its rights of subrogation against an insured under this policy unless such insured has been convicted of a criminal act, or been judicially determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such insured was not legally entitled.

62335 (5/95)                                  13

### 14.  OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

In the event of a Claim against a Director or Officer arising out of his or her serving as director, officer, trustee or governor of an Outside Entity, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity and any insurance provided to such Outside Entity with respect to its directors, officers, trustees or governors. Further, in the event such other Outside Entity insurance is provided by the Insurer or any member company of American International Group, Inc. ("AIG") (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the maximum aggregate Limit of Liability for all Losses combined covered by virtue of this policy as respects any such Claim shall be reduced by the limit of liability (as set forth on the declarations page) of the other AIG insurance provided to such Outside Entity.

### 15.  NOTICE AND AUTHORITY

It is agreed that the Named Corporation shall act on behalf of its Subsidiaries and all Insureds with respect to the giving notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period.

### 16.  ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

### 17.  ARBITRATION

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management or insurance issues relevant to the matters in dispute.

62335 (5/95)                              14

Any party may commence such arbitration proceeding in either New York, New York; Atlanta, Georgia; Chicago, Illinois; or Denver, Colorado. The arbitrators shall give due consideration to the general principles of Delaware law in the construction and interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an evenhanded fashion as between the parties, including without limitation, where the language of this policy is alleged to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy (without regard to the authorship of the language, the doctrine of reasonable expectation of the parties and without any presumption or arbitrary interpretation or construction in favor of either party or parties, and in accordance with the intent of the parties.)

The written decision of the arbitrators shall be provided to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs.

Each party shall bear equally the expenses of the arbitration.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

62335 (5/95)                           15

This page intentionally left blank

JUL-12-2004  10:44       KHUMMN, BURGEESI & RYHN              9147410025      P.02

## ENDORSEMENT# 1

This endorsement, effective *12:01 am      December 31, 2001*     forms a part of
policy number   *874-91-08*
issued to *WORLDCOM, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance
company which issued this policy; and 2) "you", "your", "named Insured", "First Named
Insured", and "Insured" mean the Named Corporation, Named Organization, Named
Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other
Insured(s)" means all other persons or entities afforded coverage under the policy.

### WASHINGTON, D.C.
### CANCELLATION/NONRENEWAL ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that the
cancellation/nonrenewal provisions of this policy are amended to read as follows:

A)   Cancellation

If this policy has been in effect for thirty (30) days or more, the Insurer may cancel
this policy only if one or more of the following reasons apply:

1)   Insured has refused or failed to pay a premium due under the terms of the
policy;

2)   Insured or Other Insured(s) have made a material and willful misstatement or
omission of fact to the Insurer or its employees, agents or brokers in
connection with any application to, or claim against the insurer; or

3)   Property or other interest of the Insured shall have been transferred to a
person other than the Insured or beneficiary, unless the transfer is
permissible under the terms of the policy, or unless the property, interest or
use thereof shall have materially changed with respect to its insurability.

The Insurer will mail or deliver to the named Insured notice of cancellation at least
thirty (30) days prior to the date of cancellation. For cancellation as described
under 2) and 3) above, the Insurer will mail or deliver a copy of the notice to the
Superintendent of Insurance at least thirty (30) days before the date of cancellation.

B)   Nonrenewal

If the Insurer decides not to renew this policy the Insurer will mail or deliver to the
named Insured the Insurer's notice of nonrenewal at least thirty (30) days before
the end of the policy period.

The Insurer will mail or deliver notice of cancellation or nonrenewal to the agent or
broker at least five (5) days prior to the Insurer's mailing of notice to the named Insured.

*END 001*

52136 (8/95)                          - 1 -

ENDORSEMENT# *1* (continued)

The Notice of cancellation or nonrenewal will be mailed or delivered to Insured's last known address and will include the reason(s) for cancellation or nonrenewal. The envelope containing the notice shall be labeled "Important Insurance Notice" in at least 18 point type or larger.

All other terms, conditions and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE

*END 001*

52136 (8/95)                                   – 2 –

ENDORSEMENT# 2

This endorsement, effective *12:01 am*     *December 31, 2001*      forms a part of policy number  *874-91-08*
issued to  *WORLDCOM, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CAPTIVE INSURANCE COMPANY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payments for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon, attributable to the ownership, management, maintenance, operation and/or control by the Company of any captive insurance company or entity including but not limited to any Claim(s) alleging the insolvency or bankruptcy of the Named Corporation as a result of such ownership, operation, management and control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 2*

_____
AUTHORIZED REPRESENTATIVE

(2/90)

JUL-12-2004  10:44          KAUFMAN, BORGEEST & RYAN                    9147410025      P.05

## ENDORSEMENT# 3

This endorsement, effective *12:01 am*      *December 31, 2001*      forms a part of
policy number  *874-91-08*
issued to   *WORLDCOM, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COMMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for Loss in connection with any Claim(s)
made against any Insured(s) alleging, arising out of, based upon, or attributable to:

    (i)    Payments, commissions, gratuities, benefits or any other favors to or for the
benefit of any full or part-time domestic or foreign government or armed
services officials, agents, representatives, employees or any members of
their family or any entity with which they are affiliated; or

    (ii)    Payments, commissions, gratuities, benefits or any other favors to or for the
benefit of any full or part-time officials, directors, agents, partners,
representatives, principal shareholders, or owners or employees, or
"affiliates" (as that term is defined in The Securities Exchange Act of 1934,
including any officers, directors, agents, owners, partners, representatives,
principal shareholders or employees of such affiliates) of any customers of
the company or any members of their family or any entity with which they
are affiliated; or

    (iii)    Political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 3*

(2/90)

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 4

This endorsement, effective *12:01 am    December 31, 2001*    forms a part of
policy number *874-91-08*
Issued to *WORLDCOM, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## NUCLEAR ENERGY LIABILITY EXCLUSIONS ENDORSEMENT
### (BROAD FORM)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured(s):

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

(1)   nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Company, or discharged or dispersed therefrom; or

(2)   nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Company; or

(3)   the furnishing by an Insured or the Company of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

(4)   claims for damages to the Company or its shareholders which alleges, arises from, is based upon, is attributed to or in any way involves, directly or indirectly, the hazardous properties of nuclear material.

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its Limit of Liability; or,

(2)   with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

*END 004*

## ENDORSEMENT# 4   (Continued)

. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means —

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

*END 004*

62739 (5/95)                          – 2 –                              EDO5921

JUL-12-2004  10:45        KAUFMAN, BORGEEST & RYAN              9147410025      P.08

## ENDORSEMENT# 5

This endorsement, effective *12:01 am*      *December 31, 2001*     forms a part of
policy number  *874-91-08*
Issued to   *WORLDCOM, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PUNITIVE DAMAGES FOR SECURITIES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that the third
paragraph of the Definition of Loss is deleted in its entirety and replaced by the following:

> Notwithstanding the foregoing, solely with respect to Securities Claims, Loss
> shall include (subject to the policy's other terms, conditions and exclusions,
> including but not limited to exclusions relating to personal profit or advantage,
> illegal remuneration, deliberate fraud or criminal acts) punitive and/or exemplary
> damages imposed upon any Insured.

It is further understood and agreed that the enforceability of this endorsement shall be
governed by such applicable law that most favors coverage for punitive damages.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 5*

_____
AUTHORIZED REPRESENTATIVE

(2/90)

### ENDORSEMENT# 6

This endorsement, effective *12:01 am    December 31, 2001*  forms a part of
policy number  *874-91-08*
Issued to   *WORLDCOM, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRIOR ACTS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to MFS Communications Company, Inc., the Insurer shall not be liable to make any payment for Loss arising from a Claim alleging a Wrongful Act which occurred prior to September 30, 1995. This policy only provides coverage for Loss arising from a Claim alleging a Wrongful Act occurring on or after September 30, 1995 and prior to the end of the Policy Period and otherwise covered by this policy. Loss(es) arising out of the same or relate Wrongful Act(s) shall be deemed to arise from the first such same or related Wrongful Act.

All other terms, conditions and exclusions remain unchanged.

*END 6*

AUTHORIZED REPRESENTATIVE

(2/90)

JUL-12-2004  10:45        KAUFMAN, BORGEEST & RYAN                9147410025      P.10

### ENDORSEMENT# 7

This endorsement, effective *12:01 am*    *December 31, 2001*    forms a part of
policy number  *874-91-08*
issued to   *WORLDCOM, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

#### POLLUTION A-SIDE SHAREHOLDER CLAIM COVERAGE

In consideration for the premium charged, it is hereby understood and agreed that as respects any Claim(s) under Coverage A of this policy only, exclusion (I) of the policy entitled EXCLUSIONS shall not apply to:

Any non-Indemnifiable Loss arising from a Claim(s) which is brought by a shareholder of the Company in the form of a shareholder direct, derivative or class action, but only if such Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any natural person Insured(s) or the Company, or any subsidiary or affiliate of the Company.

Further provided that for the purposes of the applicability of the coverage provided under this endorsement, the Company will be conclusively deemed to have indemnified the Directors or Officers to the extent that the Company is permitted or required to grant such indemnification pursuant to law, common or statutory, or contract or the charter or by-laws of the Company (which are hereby deemed to adopt the broadest provisions of the law which determines or defines such rights of indemnity). The Company hereby agrees to indemnify the Directors or Officers to the fullest extent permitted by law including the making in good faith of any required application for court approval. In no event shall this endorsement be construed to apply to any Claim(s) in which the Company has indemnified or is permitted or required to indemnify the Insureds.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 7*

AUTHORIZED REPRESENTATIVE

(2/90)

ENDORSEMENT# 8

This endorsement, effective *12:01 am      December 31, 2001*      forms a part of
policy number  *874-91-08*
issued to  *WORLDCOM, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## COINSURANCE FOR SECURITIES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that solely as
respects Securities Claims, the following clause is added to the policy:

### COINSURANCE CLAUSE

With respect to Loss under: (i) Coverage B(ii) for which the Company has
indemnified or is permitted or required to indemnify the natural person Insured(s),
as defined in subparagraphs (1) and (3) of the Definition of "Director(s) or Officer(s)
or Insured(s)", pursuant to law, common or statutory, or contract or the Charter or
Bylaws of the Company ("Indemnifiable Loss") or (ii) Coverage B(i), the Insurer shall
be liable to pay 80% of such Loss, excess of the retention amount described in
Item 5 of the Declarations as respects the first $10,000,000 Limit of Liability
described in Item 4 of the Declarations, it being a condition of this insurance that
the remaining 20% of each and every such Loss shall be carried by the Insured(s)
at their own risk and be uninsured.

With respect to all Loss other than Loss described in the above paragraph, ("non-
Indemnifiable Loss") the Insurer shall be liable to pay 100% of such Loss, excess of
the retention amount described in Item 5 of the Declarations up to the Limit of
Liability described in Item 4 of the Declarations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 8*

_____
AUTHORIZED REPRESENTATIVE

(2/90)

ENDORSEMENT# 9

This endorsement, effective *12:01 am      December 31, 2001*      forms a part of
policy number  *874-91-08*
Issued to  *WORLDCOM, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

SECURITIES CLAIM DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that the
definition of "Securities Claim" is hereby deleted in its entirety and replaced with the
following:

"Securities Claim" means a Claim, other than an administrative or regulatory
proceeding against, or investigation of a Company, made against any Insured:

(1)   alleging a violation of any federal, state, local or foreign regulation,
rule or statute regulating securities (including but not limited to the
purchase or sale or offer or solicitation of an offer to purchase or sell
securities) which is:

(i)    brought by any person or entity alleging, arising out of, based
upon or attributable to the purchase or sale or offer or
solicitation of an offer to purchase or sell any securities of a
Company; or

(ii)   brought by a security holder of a Company with respect to
such security holder's interest in securities of a Company; or

(2)   brought derivatively on the behalf of a Company by a security holder
of such Company.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

*END 9*

(2/80)

AUTHORIZED REPRESENTATIVE