WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Greg A. Danilow (GD 1621)
Michael F. Walsh (MW 8000)

Attorneys for Appellees Leo R.
Breitman, Nathan Gantcher, David V.
Harkins, Scott L. Jaeckel, Thomas H.
Lee, Ronald L. O'Kelley, and Scott A.
Schoen

BAKER & HOSTETLER LLP
12100 Wilshire Blvd., Suite 1500
Los Angeles, CA 90025
Telephone: (310) 979-8460
Facsimile: (310) 820-8859
Helen B. Kim (HK 8757)

Attorneys for Appellee Dennis A.
Klejna

SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, NY 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920
John J. Jerome (JJ 2413)

Attorneys for Appellee Joseph Murphy

FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391
Stuart I. Friedman (SF 9186)
Ivan Kline (IK 9591)

Attorneys for Appellees William M.
Sexton and Gerald M. Sherer

HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 832-8300
Facsimile: (212) 763-7600
Richard Cashman (RC 4769)

Attorneys for Appellee Philip
Silverman

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, NY 10036
Telephone: (212) 704-9600
Norman L. Eisen (NE 1198)
Thomas G. Macauley (TM 3944)
Laura E. Neish (LN 0040)

Attorneys for Appellee Tone N. Grant

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
Telephone: (212) 907-7300
Jeffrey T. Golenbock (JG 2217)
Adam C. Silverstein (AS 4876)

Attorneys for Appellee Phillip R.
Bennett

MORVILLO, ABRAMOWITZ,
GRAND, IASON, ANELLO &
BOHRER, P.C.
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
Barbara Moses (BM 2952)
Rachel Korenblat (RK 0170)

- and -

LAW OFFICES OF GABRIEL DEL
VIRGINIA
641 Lexington Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 371-5478
Gabriel Del Virginia (GV 4951)

Co-Attorneys for Appellee Robert C.
Trosten

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

AXIS REINSURANCE COMPANY,

                     Appellant,            :   No. 07-CV-7924 (GEL)

                   v.          :

PHILLIP R. BENNETT, *et al.*,       :   [caption continued on next page]

                  Appellees.       :

-------------------------------------------------------------------x

**APPELLEES' JOINT RESPONSE TO AXIS REINSURANCE
COMPANY'S APPEAL FROM THE BANKRUPTCY COURT'S
ORDERS DISMISSING AXIS'S COMPLAINT AND GRANTING
APPELLEES' MOTIONS FOR SUMMARY JUDGMENT**

```
---------------------------------------------------------x
In re                                      :
                                           :        Chapter 11
REFCO, INC., et al.,                       :        Case No. 05-60006 (RDD)
                                           :        (Jointly Administered)
                        Debtors.           :
---------------------------------------------------------x
AXIS REINSURANCE COMPANY,                  :
                                           :
                        Plaintiff,         :
                                           :        Adv. Proc. No. 07-01712 (RDD)
                v.                         :
                                           :
PHILLIP R. BENNETT, et al.,                :
                                           :
                        Defendants.        :
---------------------------------------------------------x
TONE N. GRANT, et al.,                     :
                                           :
                        Plaintiffs,        :
                                           :
                v.                         :        Adv. Proc. No.  07-2005 (RDD)
                                           :
AXIS REINSURANCE COMPANY,                  :
                                           :
                        Defendant.         :
---------------------------------------------------------x
LEO R. BREITMAN, et al.,                   :
                                           :
                        Plaintiffs,        :
                                           :
                v.                         :        Adv. Proc. No.  07-2032 (RDD)
                                           :
AXIS REINSURANCE COMPANY,                  :
                                           :
                        Defendant.         :
---------------------------------------------------------x
AXIS REINSURANCE COMPANY,                  :        (1) No. 07-CV-9420 (GEL)
                                           :        (2) No. 07-CV-9842 (GEL)
                        Plaintiff,         :        (3) No. 07-CV-10302 (GEL)
                                           :
                v.                         :
                                           :
PHILLIP R. BENNETT, et al.,                :
                                           :
                        Defendants.        :
---------------------------------------------------------x
TONE N. GRANT, et al.,                     :
                                           :
                        Plaintiffs,        :
                                           :
                v.                         :        No. 07-CV-9843 (GEL)
                                           :
AXIS REINSURANCE COMPANY,                  :
                                           :
                        Defendant.         :
---------------------------------------------------------x
```

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................................... 1

COUNTER-STATEMENT OF ISSUES PRESENTED .............................................. 3

STATEMENT OF FACTS ..................................................................................... 4

ARGUMENT ....................................................................................................... 14

I.     Axis Has Waived Its Appeal of the Dismissal Order ......................................... 14

II.    The Bankruptcy Court's Retention of the Counterclaims and Consideration of the Issue of Advancement of Defense Costs Was Not Inappropriate Simply Because the Axis Complaint Was Dismissed .................................................................. 17

III.   The Bankruptcy Court Properly Granted Summary Judgment to the Insureds on the Issue of Advancement Based on the Unambiguous Terms of the Axis Policy and Extensive Legal Precedent ................................................................ 18

        A.    New York Law Compels the Advancement of Defense Costs Where an Insurer Has Disclaimed Coverage Under a D&O Policy ............................................................... 19

        B.    The Axis and WorldCom Policy Provisions Are Substantially Similar ...................................................................... 23

        C.    Axis's Construction of the D&O Policies Is Inconsistent with the Unambiguous Terms of the Policies ........................................ 25

        D.    Kozlowski and Carlin Equities Do Not Require the Bankruptcy Court to Determine That the Exclusions Relied on by Axis are Inapplicable Prior to Ordering the Advancement of Defense Costs ........................................................... 29

IV.   Public Policy Supports the Bankruptcy Court's Decision to Require Axis to Advance Defense Costs ....................................................... 32

CONCLUSION .................................................................................................... 34

i

# TABLE OF AUTHORITIES

**CASES**                                                                                 **PAGE(S)**

*In re Adelphia Commc'ns Corp.*,
    302 B.R. 439 (Bankr. S.D.N.Y. 2003)...................................................................................15

*Associated Elec. & Gas Ins. Servs. v. Rigas.*,
    382 F. Supp. 2d 685 (E.D. Pa. 2004)..................................................................13, 19, 22, 29

*Bailey v. United Airlines*,
    279 F.3d 194 (3d Cir. 2002) ...............................................................................................15

*Carlin Equities Corp. v. Houston Cas. Co.*,
    No.05-cv-9508-LAP, 2007 WL 2456958 (S.D.N.Y. Aug. 24, 2007) .................19, 29, 30, 31

*Century 21, Inc. v. Diamond State Ins. Co.*,
    442 F.3d 79 (2d Cir. 2006) .................................................................................................20

*Fed. Ins. Co. v. Kozlowski*,
    792 N.Y.S.2d 397 (N.Y. App. Div. 2005) ................................................................. *passim*

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
    784 N.Y.S.2d 920 (N.Y. Sup. Ct. 2004), *aff'd in part, mod. in part sub nom.*,
    *Fed. Ins. Co. v. Kozlowski*, 792 N.Y.S.2d 397 (N.Y. App. Div. 2005) ...........................13, 30

*Frank v. United States*,
    78 F.3d 815 (2d Cir. 1996) .................................................................................................15

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
    No. 00-cv-6189 (DMC), 2006 U.S. Dist. LEXIS 17597 (D.N.J. Mar. 22, 2006) ...........13, 22

*Hartford Accident & Indem. Co. v. Pac. Employers Ins. Co.*,
    862 F. Supp. 160 (S.D. Tex. 1994).....................................................................................27

*Little v. MGIC Indem. Corp.*,
    649 F. Supp. 1460 (W.D. Pa. 1986), *aff'd,* 836 F.2d 789 (3d Cir. 1987) ..............................34

*Little v. MGIC Indem. Corp.*,
    836 F.2d 789 (3d Cir. 1987) ...............................................................................................22

*Murphy v. Lexington Ins. Co.*,
    No. L-5004-06 (N.J. Super. Ct. Law Div. Aug. 3, 2007) ......................................................29

*Nat'l Union Fire Ins. Co. v. Xerox Corp.*,
    792 N.Y.S.2d 772 (N.Y. Sup. Ct. 2004),
    *aff'd*, 807 N.Y.S.2d 344 (N.Y. App. Div. 2006) .......................................................15, 16, 33

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*,
    391 F. Supp. 2d 541 (S.D. Tex. 2005) .............................................................................22, 34

*Nu-Way Envtl., Inc. v. Planet Ins. Co.*,
    No. 95 Civ. 573, 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997) .............................................33

*PepsiCo. Inc. v. Cont'l Cas. Co.*,
    640 F. Supp. 656 (S.D.N.Y. 1986) .....................................................................................22

*Sun-Times Media Group, Inc. v. Royal & SunAlliance Ins. Co.*,
    No. 06C-11-108-RRC, 2007 WL 1811265 (Del. Super. Ct. June 20, 2007)........................13

*Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*,
    314 N.E.2d 37 (N.Y. 1974)............................................................................................32, 33

*Trs. of Princeton Univ. v. Nat'l Union Fire Ins. Co.*,
    839 N.Y.S.2d 437, available at No. 650202/06,
    2007 WL 1063870 (N.Y. Sup. Ct. April 10, 2007) ..........................................................13, 22

*United Capital Corp. v. Travelers Indem. Co.*,
    237 F. Supp. 2d 270 (S.D.N.Y. 2002) .....................................................................11, 12, 13

*In re WorldCom, Inc. Sec. Litig.*,
    354 F. Supp. 2d 455 (S.D.N.Y. 2005) ......................................................................... *passim*

## OTHER AUTHORITY

16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice & Procedure Juris* 3d § 3974.1 (2d ed. Supp. 1994) ..........................14, 15

## PRELIMINARY STATEMENT

Appellee-Insureds are the insured parties under certain D&O policies purchased by Refco, including a policy issued by Axis. As a result of the collapse of Refco, the Insureds are defendants in numerous suits. The Insureds sought and continue to seek payment of their respective defense costs from Refco's D&O insurers, including Axis. To avoid payment of the Insureds' defense costs, Axis commenced a declaratory judgment action before the Bankruptcy Court in Refco's chapter 11 cases requesting a determination that certain exclusions purportedly in its D&O insurance policy applied.[1] Certain Insureds moved to dismiss the Axis complaint, while others filed counterclaims seeking affirmative relief on the issue of policy coverage and Axis's obligation to advance defense costs. The Bankruptcy Court dismissed Axis's complaint, but retained the counterclaims. Ultimately, the Bankruptcy Court entered summary judgment for the Insureds requiring Axis to advance defense costs. Axis filed notices of appeal from both the dismissal of its complaint and the grant of summary judgment on defense costs.

The Bankruptcy Court dismissed Axis's complaint because the facts required to establish the application of the purported exclusions in the policies on which Axis relied in its complaint – that Refco's former CEO Phillip R. Bennett committed acts that were not disclosed to Axis – substantially overlapped with the issues in the underlying criminal and tort actions against the Insureds. The law is clear that if such a substantial overlap exists, the court considering the coverage litigation must defer to, and wait for, the findings in the underlying actions. In its appellate brief, Axis does not challenge that ruling or argue that the order dismissing its complaint should be reversed. Thus, it has waived that portion of its appeal.

---

[1] The very existence of the exclusions relied on by Axis are hotly disputed by the Insureds.

The minor focus of Axis's appellate brief is whether the Bankruptcy Court should have dismissed the Insureds' counterclaims when it dismissed Axis's complaint. Axis argues that the Bankruptcy Court ruled inconsistently and unfairly by refusing to consider the "coverage" issues raised by Axis, while at the same time retaining jurisdiction to adjudicate the "coverage" issues raised by the Insureds. In fact, no inconsistency or unfairness exists. Axis sought a decision of no coverage based on certain exclusions to its policy – and the Bankruptcy Court correctly concluded that these exclusions cannot be applied without the adjudication of the same facts at issue in the underlying actions. However, the Bankruptcy Court concluded that issues raised by the Insureds' request for advancement is one of contractual interpretation and does not overlap with or require resolution of the factual issues in the underlying actions.

The Bankruptcy Court held that, as a matter of contract interpretation and application of New York law, Axis was required to advance defense costs *pending* a final determination of coverage. In New York, an insurer's duty under a D&O policy to defend its insured (or advance defense costs to its insured) is broader than its duty to indemnify. This means that the insurer must defend or pay the costs of defending against claims that, if proven, may not be covered by the underlying policy. In essence, directors and officers are (vis-à-vis their insurer) innocent until proven guilty – and their D&O insurer is duty-bound to provide them the means to defend their innocence. This result is fair because Axis has the right under the terms of its policy to recoup defense costs if a court ultimately determines that the Insureds are not entitled to coverage. This is the remedy Axis bargained for when it agreed to provide insurance on the terms and conditions of its policy.

The balance of Axis's brief is an attempt to show that the Bankruptcy Court's contract interpretation and application of New York law was wrong. Axis asserts that it issued a

*unique policy authorizing the insurer to unilaterally deny coverage* and thus avoid payment of defense costs, whenever the *insurer believes* a matter is outside the indemnification provided by the policy. For example, where a claim for a wrongful act is made against an officer or director and such claim alleges conduct that, *if true*, would be excluded, Axis asserts it has the right under the policy to refuse to pay defense costs, notwithstanding the fact that the allegations may be untrue. Thus, according to Axis, its duty to advance defense costs is actually *less* than its duty to indemnify – a proposition completely at odds with New York law.

Axis's policy is not materially different from other insurance policies the courts in New York have interpreted. As the New York cases make clear, unless the court can determine that coverage does not exist based on the face of the pleadings in the underlying actions, defense costs must be advanced. Moreover, the notion that an insurer who is paid to protect the insureds could decide – unilaterally as if it were a court of law – that an insured is not entitled to defense costs runs counter to the very purposes of D&O insurance. Axis goes too far. The protection it bargained for, and agreed to, under the policy is clear and unambiguous: It has the right to recoup defense costs that ultimately are determined not to be covered.

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

Whether the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") erred in granting the Appellee insureds' motion for summary judgment to require excess insurance carrier Appellant Axis Reinsurance Company ("<u>Axis</u>") to advance defense costs in the underlying actions, pending a final judicial determination of coverage, where it is undisputed that (a) defense costs are covered under the excess policy issued by Axis (the "<u>Axis Policy</u>"), (b) the underlying actions fall within the definition of "Claims" that are covered by the Axis Policy, and (c) the primary policy, to which the Axis Policy follows

form, expressly requires the carrier to advance defense costs "as incurred," unless and until there

is a final determination that such costs are not covered.

## STATEMENT OF FACTS

### A.    Refco and the Underlying Actions

On or about October 17, 2005, Refco, Inc. and most of its direct and indirect

subsidiaries (collectively, with Refco, Inc.'s predecessor, Refco Group Ltd., LLC, "Refco") filed

voluntary petitions for relief in the Bankruptcy Court under chapter 11 of title 11 of the United

States Code.

The collapse of Refco in October 2005 and the bankruptcy filings that quickly

followed led to the commencement of a series of civil lawsuits, government investigations, and

criminal proceedings against the insureds (the "Underlying Actions"). A number of these

proceedings remain pending.[2] Of particular note, each of the Appellees is a former officer or

director of Refco (collectively, the "Insureds") and a defendant in *In re Refco, Inc. Securities

Litigation*, 05 Civ. 8626 (S.D.N.Y.) (the "Securities Litigation"), a putative class action brought

on behalf of Refco bondholders and shareholders. Discovery in the Securities Litigation is

presently ongoing, and the Insureds have incurred and are continuing to incur substantial legal

expenses in connection with the Securities Litigation. Moreover, three Insureds are awaiting

trial in *United States v. Bennett, et al.*, 05 Cr. 1192 (S.D.N.Y.), which is scheduled to commence

on March 17, 2008, and are incurring significant defense costs to prepare for trial.

---

[2] Each of the insureds properly gave notice of the Underlying Actions in which they were named
to the insurers in the Refco "tower" of liability insurance, and requested coverage from such
insurers under the policies described below. Axis does not dispute that it was given proper
notice of the Underlying Actions by the insureds. (Axis Desig. Item 4 ¶¶ 6, 101, 133, 137.)

B.     **The Refco D&O Policies**

Prior to the commencement of Refco's bankruptcy cases, Refco obtained D&O liability insurance for the benefit of its directors and officers. Refco's D&O insurance is structured as a "tower," consisting of a primary policy and five excess policies providing for a total of $70 million of coverage for the policy period of August 11, 2005, to August 11, 2006.[3]

1.     **The U.S. Specialty Policy**

U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy (Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821) for the period August 11, 2005, to August 11, 2006 (the "Policy Period"), with a $10 million limit of liability (the "Primary Policy") (Axis's Designation of Items in Record on Appeal and Statement of Issue Presented, dated October 26, 2007 (hereinafter, "Axis Desig.") Item 2.)

The Primary Policy names as "Insured Persons" "any past, present or future director or officer of the Company . . . ." (*Id.* at Definition (F).) It provides those directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts." (*Id.* at Insuring Agreement (A).) "Loss," as defined by the Primary Policy, includes "Defense Costs . . . an Insured Person is legally obligated to pay as a result of any Claim . . . ." (*Id.* at Definition (G) and Endorsement No. 4.)

Each of the Insureds is a former officer or director of Refco (Axis Desig. Item 4), and Axis does not dispute that the Underlying Actions against the Insureds constitute "Claims" for "Wrongful Acts" as defined in the Primary Policy.

---

[3]  The tower of Refco's D&O insurance is as follows: (1) U.S. Specialty Insurance Company ($10 million primary coverage); (2) Lexington Insurance Company ($7.5 million excess of $10 million); (3) Axis Reinsurance Company ($10 million excess of $17.5 million); (4) Allied World Assurance Company ($12.5 million excess of $27.5 million); (5) Arch Insurance Company ($10 million excess of $40 million); and (6) XL Insurance Company ($20 million excess of $50 million).

The Primary Policy explicitly requires U.S. Specialty to advance defense costs as incurred:

> The Insurer will pay covered Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.

(Axis Desig. Item 2 at Condition (D)(2).)

### 2.     The Lexington Policy

Lexington Insurance Company ("Lexington") issued the first excess policy (Directors and Officers Insurance and Company Reimbursement Policy No. 1620924) in the amount of $7.5 million for the Policy Period (the "Lexington Policy").  (Appellees' Counter-Statement of Issues and Counter-Designation of Record dated November 2, 2007 (hereinafter, "Appellee Desig.") Ex. 1.)

The Lexington Policy "follows the form" of the Primary Policy.  Accordingly, the Lexington Policy "indemnif[ies] the Insured . . . in accordance with the applicable insuring agreements, terms, conditions and exclusions of the Underlying Policy . . . ."  (*Id.* at § I.)

### 3.     The Axis Policy

Axis issued the second excess policy (SecureExcess Policy No. RNN 506300) in the amount of $10 million for the Policy Period (Axis Desig. Item 1.)

Like the Lexington Policy, the Axis Policy "follows the form" of the Primary Policy and, accordingly, provides coverage "in conformance with the provisions of the applicable Primary Policy and, to the extent coverage is further limited or restricted thereby, to any other applicable Underlying Insurance [*i.e.* the Lexington Policy]," except to the extent that the Axis Policy contains its own provisions that further limit or restrict coverage otherwise provided by the Primary Policy and the Lexington Policy.  (*Id.* at § I.)

The Axis Policy defines "Claim(s)" as "event(s) which take place during the Policy Period and which trigger(s) coverage under the insuring agreement(s) of the Underlying Insurance."  (*Id.* at (II), Definitions (A).)  Accordingly, a "Claim" for a "Wrongful Act" brought against the Insureds that falls within the Primary Policy also falls within the Axis Policy.  There is no dispute that the Underlying Actions are "Claims" against the Insureds (and other insured officers and directors) for "Wrongful Acts" that are covered by the Primary Policy and the Axis Policy.

The Axis Policy expressly states that when, as here, the Primary Policy and Lexington Policy are exhausted, it will "continue as primary insurance."  (*Id.* at § IV (Reduction or Exhaustion of Underlying Limits (B).)  Specifically, it provides that "[i]f the Underlying Limits are wholly exhausted solely due to actual payment under the Underlying Insurance, this Policy shall continue to apply as primary insurance with respect to the applicable Insurance Product(s) . . . ."  (*Id.*)  The Axis Policy also explicitly provides that defense costs are covered:

> **THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS.**

(*Id.* at Declarations Page.) (bold and capital letters in original).

### C.    U.S. Specialty's and Lexington's Payment of Defense Costs

Complying with the terms and scope of Refco's D&O liability insurance policies, U.S. Specialty and Lexington – the primary and first excess insurers – advanced defense costs to Refco's former officers and directors.  Both U.S. Specialty and Lexington requested and received permission from the Bankruptcy Court for relief from the automatic stay to advance defense costs to the Insureds.  (Appellee Insureds Klejna, Sexton, Sherer and Silverman's Counter-

Designation of the Record and Counter-Statement of the Issue on Appeal (hereinafter, "Second Appellee Desig") at Exs. 2, 4.)[4]

Thereafter, U.S. Specialty and Lexington complied with their coverage obligations and advanced defense costs to the Insureds until the limits of their respective policies were exhausted, subject to their rights to seek repayment under the second sentence of Condition (D)(2) in the event it is finally determined that the Insureds' claims are not covered. (Second Appellee Desig. at Exs. 3, 7.)

**D.      Axis's Refusal to Advance Defense Costs, the Axis Complaint and the Bankruptcy Court's August 30, 2007 Preliminary Injunction Orders**

By letter dated March 6, 2006 (Axis Desig. Item 15), Axis denied coverage to the Insureds for the Underlying Actions.

On May 23, 2007, Axis commenced an adversary proceeding in the Bankruptcy Court (the "Axis Complaint") against the Insureds. The Axis Complaint contained four counts, each purporting to set forth a separate ground for Axis's position that the Axis Policy does not provide coverage for any of the Insureds for any of the Underlying Actions. (Axis Desig. Item 4.) Axis sought to deny coverage on the basis of (i) a purported warranty letter signed by Phillip R. Bennett ("Bennett") (which does not refer to and was not incorporated into the Axis Policy), (ii) a knowledge exclusion (which was not part of the Axis Policy as bound), (iii) an alleged omission in the application for insurance signed by Bennett, and (iv) a pending and prior

---

[4] Because Lexington initially took the position that its policy did not provide coverage for defense costs, two of the Insureds – Dennis Klejna and Joseph Murphy – commenced an action in the Superior Court of New Jersey seeking a declaration that the Lexington Policy did provide coverage for defense costs. In the course of that proceeding, Lexington agreed to advance defense costs, subject to an agreement to reimburse Lexington in the event it was ultimately determined that defense costs were not covered. Thereafter, the New Jersey Superior Court entered summary judgment against Lexington, holding that "the Lexington Excess Policy covers defense costs and fees." *See Murphy v. Lexington Ins. Co.*, No. L-5004-06, slip op. at 2 (N.J. Super. Ct. Law Div. Aug. 3, 2007) (Second Appellee Desig. Ex. 6).

litigation exclusion.  (*See id.* and Appeal at 2-3.)  In any event, each of the purported exclusions depends on facts that are at issue in the Underlying Actions.

On or about July 12, 2007, Insureds Klejna, Murphy, Sherer, Sexton, and Silverman (the "Officer Insureds") answered the Axis Complaint and filed counterclaims seeking a declaration that they are entitled to coverage under the Axis Policy, and an injunction to compel Axis to pay for Losses (which include Defense Costs) in the Underlying Actions in accordance with the Axis Policy.[5]  (Axis Desig. Items 8, 9, 10.)  Axis did not seek dismissal of the Officer Insureds' counterclaims.  Instead, on August 16, 2007, Axis filed answers.  (Second Appellee Desig. Exs. 9, 10.)  On August 23, 2007, Axis filed its answer to the Amended Answer and Counterclaims of Insureds Klejna and Murphy.  (*Id.* at Ex. 11.)

On July 12, 2007, the Officer Insureds also filed a motion for preliminary injunctive relief to compel Axis to advance defense costs under the Axis Policy.  (Axis Desig. Item 5.)  Insureds Grant, Bennett, and Trosten (collectively, the "Indicted Insureds") joined in the Officer Insureds' motion for advancement, but did not, at that time, file answers or counterclaims.

After Axis's counsel confirmed at oral argument on August 30 that Axis would not pay the Insureds' defense costs (Axis Desig. Item 11 at 27), the Bankruptcy Court granted the Officer Insureds' motion for a preliminary injunction requiring Axis to advance defense costs for attorneys' fees and costs submitted to Axis as of the date of the Bankruptcy Court's Order. Specifically, the Bankruptcy Court's August 31, 2007 Order directed Axis

> to advance … payment of the Defense Costs of Movants [Klejna, Murphy, Sexton, Sherer and Silverman] in the Underlying Actions that have been billed through the date of this Order, pending a final determination by this

---

[5] On or about July 31, 2007, Insureds Klejna and Murphy filed an Amended Answer and Counterclaims to similar effect.  (Axis Desig. Item 10.)

Court of Movants' claim that Axis has no right to withhold Defense Costs
(a) unilaterally or (b) until there is a final determination by a court of
competent jurisdiction of Axis' denial of coverage under the Axis Policy.

(Axis Desig. Item 12.)

###   E.    The Dismissal of the Axis Complaint

On July 12, 2007, the same day that the Officer Insureds moved for preliminary injunctive relief on the issue of advancement of defense costs, Insureds Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley, and Schoen (the "Director Insureds") moved to dismiss the Axis Complaint.  The Indicted Insureds also joined the Director Insureds' motion to dismiss. The Indicted Insureds also moved, in the alternative, to stay the action pending the outcome of their criminal proceedings (as well as joining the Officer Insureds' motion for advancement, as noted above).

On August 30, 2007, the Bankruptcy Court dismissed the Axis Complaint without prejudice, holding that "a declaratory judgment action commenced by an insurer seeking a determination of coverage under an insurance contract should be dismissed without prejudice or stayed where there is a substantial overlap of the underlying factual issues in such coverage determination action and factual issues will be adjudicated in a pending underlying tort action or criminal proceeding."  (Axis Desig. Item 13 at 2 (the "Dismissal Order").)  The Bankruptcy Court also found that there is "substantial overlap of the factual issues raised in this coverage determination commenced by Axis and the underlying tort and criminal proceedings referenced in the Complaint pending before the United States District Court for the Southern District of New York."  (*Id.*)

###   F.    The Bankruptcy Court's September 11, 2007 Preliminary Injunction Order

Despite advancing the Officer Insureds' defense fees and costs, Axis refused to advance the defense fees and costs of its other Insureds absent a separate court order requiring

them to do so.  Therefore, on September 5, 2007, the Indicted Insureds commenced another

adversary proceeding against Axis likewise seeking a declaration that Axis is required to

advance defense costs under the Axis Policy and an injunction to compel advancement.  (Axis

Desig. Items 17, 19.)

On the same date, the Indicted Insureds moved for a preliminary injunction

directing Axis to advance defense costs incurred by them in connection with the Underlying

Actions.

On September 11, 2007, the Bankruptcy Court heard oral argument on their

motion (Axis Desig. Item 21) and, by order dated September 12, 2007, directed Axis to advance

the Indicted Insureds' defense costs for invoices submitted to Axis on or before August 31, 2007

(*i.e.*, the same relief previously granted to the Officer Insureds).  (*Id*. at Item 22.)

### G.     The Director Insureds' Adversary Proceeding
### for Advancement of Defense Costs

On September 17, 2007, the Director Insureds commenced a separate adversary

proceeding against Axis also seeking a declaration that Axis is required to advance defense costs

under the Axis Policy and an injunction to compel advancement.  (Axis Desig. Items 23, 24.)

### H.     The Bankruptcy Court's Entry of Summary
### Judgment on Advancement of Defense Costs

On October 12, 2007, the Insureds all moved for summary judgment on their

claims for permanent injunctive relief to require Axis to advance defense costs as incurred under

the Axis Policy until the Axis Policy is exhausted or until there has been a final judicial

determination that the Insureds are not entitled to coverage under the Axis Policy.

By Order, dated October 19, 2007, as amended on October 22, 2007, the

Bankruptcy Court granted the motions for summary judgment in their entirety.  (Axis Desig.

Item 36; Appellee Desig. Ex. 3.)  The Bankruptcy Court noted, at the outset, that this type of

dispute regarding "the scope of insurance coverage for defense costs" is "particularly appropriate . . . for summary judgment," citing *United Capital Corp. v. Travelers Indemnity Co.*, 237 F. Supp. 2d 270, 274 (S.D.N.Y. 2002), because insurance policy disputes "hinge . . . on the terms of the contract, and contract determination often lends itself to summary judgment analysis." (Axis Desig. Item 36, Ex. A at 4.)

Noting its August 30, 2007 determination that New York law governs the interpretation of the Axis Policy (*Id*. at 5), the Bankruptcy Court relied on principles of contract interpretation under New York law, including the obligation to construe any ambiguity against an insurer and to construe insurance policies in favor of the insured when interpreting the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability. (*Id*. at 5-7.)

Turning to the issue whether Axis is contractually bound to advance defense costs prior to the final determination of coverage, the Bankruptcy Court focused on Condition (D)(2) of the Primary Policy, which is incorporated by reference into the Axis Policy. (*Id*. at 10-11.) In response to Axis's claim that it possesses the unilateral right to deny coverage under Condition (D)(2), the Bankruptcy Court noted that "nowhere does it state that, or even imply . . . that the insurer can unilaterally or in the exercise of its reasonable judgment or in any other way withhold defense costs absent a court determination in the event of a dispute as to whether defense costs are covered." (*Id*. at 12-13.) In light of the case law emphasizing "the logic and policy behind requiring the advancement of disputed defense costs," the Bankruptcy Court concluded that

> the absence of such language, in addition to the language of (d)(2), which again, says that the insurer will pay covered costs and in the next sentence provides for a refund mechanism if defense costs are finally determined to have not been covered, that the reasonable and ordinary course colloquial interpretation of paragraph (d)(2) is that, absent a final determination by an objective fact finder, the

> insurer is obligated to pay defense costs that the insured reasonably
> contends are covered, notwithstanding the insurer's view that those
> costs are excluded or not covered under the policy.  In other words,
> unless the insured's position on coverage is clearly, facially wrong,
> the agreement contemplates that defense costs will be advanced
> subject to later refund if the coverage dispute ultimately is
> determined in the insurer's favor.

(*Id*. at 13: 7-21.)  The Bankruptcy Court held that this interpretation was "clear in the context of the entire agreement, particularly because of the refund mechanism in (d)(2) and the absence in the agreement of any provision conferring on the insurer the unilateral ability to make such a determination."  (*Id*. at 13: 22-26)  The Court further noted that, to the extent that an ambiguity existed, Axis "has offered up no extrinsic evidence to support its interpretation of paragraph (d)(2)" and therefore determined that "such an ambiguity," to the extent it existed, had to be construed against Axis.  (*Id*. at 14: 1-6.)

Finally, in granting summary judgment in favor of the Insureds, the Bankruptcy Court observed that it was not "writing on a clean slate," and specifically cited to other decisions granting advancement of defense costs, specifically, *In re WorldCom, Inc. Securities Litigation,* 354 F. Supp. 2d 455 (S.D.N.Y. 2005); *Federal Insurance Co. v. Tyco International Ltd.,* 784 N.Y.S.2d 920 (N.Y. Sup. Ct. 2004), *aff'd in part, mod. in part sub nom., Federal Insurance Co. v. Kozlowski,* 792 N.Y.S.2d 397 (N.Y. App. Div. 2005); *Trustees of Princeton University v. National Union Fire Insurance Co.,* 839 N.Y.S.2d 437, available at No. 650202/06, 2007 WL 1063870 (N.Y. Sup. Ct. Apr. 10, 2007); *Associated Electric & Gas Insurance Services Ltd. v. Rigas*, 382 F. Supp. 2d 685 (E.D. Pa. 2004); *G-I Holdings, Inc. v. Reliance Insurance Co.,* No. 00-cv-6189 (DMC), 2006 U.S. Dist. LEXIS 17597 (D.N.J. Mar. 22, 2006); and *Sun-Times Media Group, Inc. v. Royal & SunAlliance Ins. Co. of Canada,* No. 06C-11-108-RRC, 2007 WL 1811265 (Del. Super. June 20, 2007).  (Axis Desig. Item 36, Ex. A at 15-22.)

On October 22, 2007, Axis appealed from the Bankruptcy Court's October 19, 2007 Order.

## ARGUMENT

In this appeal, Axis purports to challenge two orders entered by the Bankruptcy Court. With respect to the Bankruptcy Court's order dismissing Axis's complaint, Axis has waived its appeal because it fails to challenge the Bankruptcy Court's ruling on the merits. With respect to the advancement of defense costs, the Bankruptcy Court properly granted summary judgment to the Insureds based on the unambiguous terms of the Axis policy and extensive legal precedent. New York law is clear that Axis may not avoid its obligation to advance defense costs by simply disputing coverage. Moreover, Axis's arguments that it may unilaterally disclaim coverage are inconsistent with the clear terms of the policy and public policy. Axis has an obligation to advance defense costs and the Bankruptcy Court's summary judgment order should be affirmed.

## I.    Axis Has Waived Its Appeal of the Dismissal Order

According to Axis's Designation of Items in Record on Appeal and Statement of Issues Presented with respect to the Dismissal Order, the issue on appeal is whether the Bankruptcy Court was correct to dismiss the Axis Complaint "based on the supposed overlap of issues and facts to be determined in the declaratory judgment coverage action and the Underlying Action currently pending before Judge Lynch in the District Court . . . ." *See Axis Reinsurance Co. v. Breitman, et al.*, Case No. 07-cv-09842-GEL (S.D.N.Y.) (Dkt. No. 2).

Notwithstanding that preliminary filing, nowhere in Axis's appeal brief (the "Appeal") is this issue presented or argued. Axis neither challenges the substantial overlap doctrine nor its application to the facts here. The rule is clear that "to assure consideration of an issue by the court the appellant must both raise it in [the] "Statement of Issues" and pursue it in

the "Argument" portion of the brief . . . ."  *See* 16A Charles Alan Wright, Arthur R. Miller &

Edward H. Cooper, Federal Practice & Procedure Juris 3d § 3974.1 (2d ed. Supp. 1994); *see also*

*Frank v. United States*, 78 F.3d 815, 832-33 (2d Cir. 1996) (holding that appellee/cross-appellant

waived his right to raise an issue on appeal where he "mentioned the . . . claim in the 'issues'

section [of the brief] and attempted to present it to [the circuit court] by referring to his

arguments to the district court, [but] failed to present an argument or a 'conclusion stating the

precise relief sought' with respect to it" and further noting that "[i]ssues not sufficiently argued

are in general deemed waived and will not be considered on appeal . . . simply stating an issue [is

insufficient]: an appellant . . .  must state the issue *and* advance an argument"); *Bailey v. United*

*Airlines*, 279 F.3d 194, 204 (3d Cir. 2002) ("[A]lthough [appellant] included in his statement of

the issues [in his brief] to be raised . . . whether the trial court improperly refused to grant a

reasonable extension of the discovery deadline, he failed to argue this issue in his brief . . . [and

t]herefore, this argument was waived." (internal quotation marks omitted)).  Thus, Axis has

waived its appeal of the Bankruptcy Court's Dismissal Order.

Nevertheless, if this Court were to review the Bankruptcy Court's Dismissal

Order on the merits, it is clear the Bankruptcy Court's Dismissal Order was proper.  It is well-

settled that where the factual predicates necessary to a coverage dispute are being adjudicated in

a pending tort action or criminal proceeding, the coverage actions must be dismissed or stayed in

deference to those underlying proceedings.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 302 B.R.

439, 455 (Bankr. S.D.N.Y. 2003) ("[T]he Court . . . [s]tays proceedings in the Declaratory

Judgment Action insofar as they relate, in any way, to requests for rescission of the D & O

Policies . . . subject to modification and/or reconsideration at the conclusion of the criminal trials

. . . ."); *Nat'l Union Fire Ins. Co. v. Xerox Corp.*, 792 N.Y.S.2d 772, 783 (N.Y. Sup. Ct. 2004),

*aff'd*, 807 N.Y.S.2d 344 (N.Y. App. Div. 2006) (granting defendants' motion to dismiss insurer's motion for declaratory judgment on non-coverage because the "cause of action is not ready for determination, and will likely be fully determined in the context of the various securities actions.").

In dismissing the Axis Complaint, the Bankruptcy Court properly determined that the application of the exclusions claimed by Axis could not be determined at this time without delving into factual issues that substantially overlapped with issues in the Underlying Actions. As the Bankruptcy Court observed:

> Ultimately the facts that Axis would need to establish to prevail on its claim and, to the contrary, the facts that the defendants would need to refute to defeat Axis' claim substantially overlap with facts that would also in all likelihood arise in the pending securities litigation before District Judge Lynch, as well as, potentially, in the District Court criminal litigation against Grant, Trosten and Bennett.

(Axis Desig. Item 21 at 51: 21 – 52: 2.)[6]  Because the facts at issue in Axis's coverage dispute are substantially similar to the facts at issue in the Underlying Actions before the District Court, the Bankruptcy Court properly abstained from deciding the issue of coverage until the Underlying Actions are adjudicated and correctly dismissed the Axis Complaint.

---

[6] The Dismissal Order merely postponed, but did not eliminate, Axis's ability to adjudicate coverage based on the exclusions raised by Axis, but did *not* address any other coverage issues. (Axis Desig. Item 21 at 51:15-16.)  Axis is free to seek a determination of coverage based on exclusions that do not require factual determinations that substantially overlap with issues in the Underlying Actions.

**II.    The Bankruptcy Court's Retention of the Counterclaims and
        Consideration of the Issue of Advancement of Defense Costs Was Not
        Inappropriate Simply Because the Axis Complaint Was Dismissed**

Axis asserts that the Bankruptcy Court's retention of the counterclaims brought

by the Officer Insureds and the entry of preliminary injunction orders compelling Axis to

advance defense costs was inconsistent with its decision to dismiss the Axis Complaint.

There is no inconsistency between dismissing the Axis Complaint and retaining

the Officer Insureds' counterclaims (including the counterclaims for advancement) because the

counterclaims – unlike the Axis Complaint – do not require resolution of facts that substantially

overlap with issues in the Underlying Actions.  As the Bankruptcy Court explained, in order for

Axis to prevail on its Complaint, Axis was required to show (1) that the claimed exclusions are

part of the Axis Policy and (2) that the exclusions were triggered by Bennett's actual prior

knowledge.  (Axis Desig. Item 11 at 89-90.)  In contrast, to prevail on the coverage portion of the

counterclaims, the Officer Insureds need only prove that the claimed exclusions are *not* part of

the Axis Policy – an issue which does not require the resolution of any issues that substantially

overlap with the factual issues in the Underlying Actions.  (*Id.*)

As for the counterclaims relating to advancement, the Insureds need only prove an

issue of contractual interpretation that can be decided solely on the language of the D&O

policies.  Because the issue of advancement – an issue of law – was not intertwined with the

Underlying Actions, it was appropriate for consideration by the Bankruptcy Court.[7]  (*Id.*)

---

[7] At the September 11, 2007 preliminary injunction hearing, Axis once again argued that the
Bankruptcy Court's ruling on the advancement of defense costs was inconsistent with the
Court's prior dismissal of the Axis Complaint.  Again, the Bankruptcy Court properly rejected
Axis's position upon determining that the issue of advancement of defense costs did *not* overlap
with issues to be determined in the Underlying Actions and thus could be immediately
adjudicated.  As the Bankruptcy Court stated, "the basis for [the request for advancement] is one
in which I need not consider the factual issues that overlap with the District Court securities
litigation and the criminal litigation but rather need only consider the language of the contract,

In summary, there has never been a risk of inconsistent rulings or piecemeal litigation, as Axis suggests, because no ruling on the exclusions was ready to be made by any court – and the Bankruptcy Court's rulings were limited only to those issues that do not overlap with the Underlying Actions.[8]  Furthermore, Axis has no basis to complain about the Bankruptcy Court's retention of the Officer Insureds' counterclaims for the simple reason that Axis never moved to dismiss the counterclaims.  To the contrary, Axis filed *answers* to those counterclaims and thereby joined issue.  (Second Appellee Desig. Exs. 9, 10, 11.)

### III.    The Bankruptcy Court Properly Granted Summary Judgment to the Insureds on the Issue of Advancement Based on the Unambiguous Terms of the Axis Policy and Extensive Legal Precedent

The Axis Policy requires the advancement of "covered" defense costs on an as-incurred basis.  (Axis Desig. Items 1, 2.)  In the "Statement of the Facts" and the introduction to Point II of its brief, Axis asserts that it has the right under the Axis Policy to determine unilaterally whether defense costs are "covered" and the corollary right to deny advancement if it determines that coverage does not exist.  (Appeal at 4, 13-14.)  However, Axis fails to identify any provision in the policy that supports that position.  As the Bankruptcy Court noted,

> nowhere does [the policy] state that . . . the insurer can unilaterally or in the exercise of its reasonable judgment or in any other way withhold

---

that is the insurance policies and the related warranty, and applicable case law."  (Axis Desig. Item 21 at 58: 1-6.)

[8] Axis also argues that the Bankruptcy Court's denial of Arch Insurance Company's ("Arch") request to intervene was inconsistent with its preliminary injunctions requiring advancement of defense costs.  Arch, a later tiered insurer in the Refco D&O insurance tower, previously commenced a declaratory judgment action similar to the Axis Complaint a year earlier with the New York State Supreme Court.  The Arch complaint had similarly been dismissed due to the substantial overlap doctrine.  Hardly acting inconsistently, the Bankruptcy Court excluded Arch in no small part due to its concern that "if I permitted [Arch] to intervene . . . [it] would be an end run around that order [issued by the New York state court]."  (Axis Desig. Item 11 at 18: 12-13.)

defense costs absent a court determination in the event of a dispute as to whether defense costs are covered.

(Axis Desig. Item 36, Ex. A at 12: 24 – 13: 4.)  Based on facts similar to the present case, the

*Rigas* court observed that

> [i]t would be possible for carriers issuing D&O policies to explicitly reserve to themselves the unfettered discretion whether to advance defense costs – but that language does not appear in these policies.  No doubt, as a matter of business common sense, the Carriers might be reluctant to issue a policy with such a draconian power, because they might find it difficult to sell such a policy in the marketplace.
>
> *             *             *
>
> Insurance carriers do not function as courts of law.  If a carrier wants the unilateral right to refuse a payment called for in the policy, the policy should clearly state that right.  This policy does not do so.

382 F. Supp. 2d at 701.

Axis further argues that the Bankruptcy Court (i) inappropriately based its decision on the *WorldCom* case, (ii) misinterpreted the terms of the Axis Policy, (iii) failed to properly apply the *Kozlowski* and *Carlin Equity* cases, and (iv) was incorrect to conclude that public policy reasons supported its decision.  The following sections set forth the law in New York on the issue of advancement of defense costs and then refute each of Axis's arguments.

A.      **New York Law Compels the Advancement of Defense Costs Where an Insurer Has Disclaimed Coverage Under a D&O Policy**

The law in New York is very clear – an insurer is required to advance defense costs pending a final determination of coverage.  This requirement flows from the broad scope of an insurer's duty to defend or pay defense costs for an insured.  As stated recently by the New York Appellate Division,

> [t]he rule is well settled that the duty to defend is broader than the duty to indemnify . . . [and that] the same allegations that trigger a duty to defend trigger an obligation to pay defense costs.  Both an insurer's duty to defend and to pay defense costs under liability insurance policies must be construed broadly in favor of the policyholder.

*Kozlowski*, 792 N.Y.S.2d at 402 (internal quotation marks and citations omitted).  *See also*

*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82-83 (2d Cir. 2006) (under New York

law, "a defense obligation may be avoided only where there is no possible factual or legal basis

on which an insurer's duty to indemnify under any provision of the policy could be held to

attach") (internal quotation marks and citations omitted).

   A leading decision on point, applying this principle, is *In re WorldCom, Inc.*

*Securities Litigation*, which held that the commencement of a coverage dispute does not absolve

the insurance company of its duty to advance defense costs.  354 F. Supp. 2d at 467.  In

*WorldCom*, Continental Casualty Company – one of the excess D&O insurance carriers –

advised WorldCom that, based on WorldCom's false financial statements, Continental

considered its policy to be void and rescinded.  Continental subsequently commenced an action

in the Southern District of New York seeking a determination that it had properly rescinded the

policy.  The bankruptcy court in WorldCom's chapter 11 case stayed that suit.  *Id.* at 461.

   Ultimately, Bert Roberts – a former chairman of the board of WorldCom – sought

an order directing Continental to advance defense costs.  In its defense, Continental argued that it

had no obligation to advance defense costs because the policy was properly rescinded.  *Id.* at

462-63.  Judge Cote rejected Continental's position and held that an "insurer is bound by the

obligations in [its] contract to advance defense costs until the contract is found to be rescinded."

*Id.* at 466 (*quoting Rigas*, 382 F. Supp. 2d at 691).  In reaching that conclusion, Judge Cote

enumerated key principles under New York insurance law.  First, she noted that "'[t]he rule that

insurance policies are to be construed in favor of the insured is most rigorously applied in

construing the meaning of exclusions incorporated into a policy of insurance or provisions

seeking to narrow the insurer's liability.'"  *Id.* at 464 (citations omitted).  In addition, the court

noted that the duty to pay for the defense of the insured, if included in the contract, is (i) a "heavy one," (ii) "independent of the ultimate success of the suit against the insured," and (iii) "construed liberally and any doubts about coverage are resolved in the insured's favor." *Id.* (citations and internal quotation marks omitted).

*WorldCom* is directly applicable to the dispute between Axis and the Insureds. Like Continental, Axis disclaimed coverage and sought a declaratory judgment that it had no obligation to the Insureds. As in *WorldCom*, the Insureds here seek to enforce Axis's contractual obligation to advance defense costs under its policy, pending a determination on whether certain exclusions or other defenses to coverage apply. For the reasons stated in *WorldCom*, the Court should uphold the Bankruptcy Court's decision that Axis must advance defense costs at this time.

The court in *Kozlowski* also made clear that a coverage dispute does not affect the insurer's duty of advancement. 792 N.Y.S.2d at 401. In *Kozlowski*, the court considered whether the insurer had the right to avoid its obligations to pay defense costs by asserting that the policy had been rescinded (on the basis of alleged fraudulent inducement) and that an exclusion had been triggered, without a judicial determination of either matter. The court held that until the insurer's rescission claim or its invocation of an exclusion was adjudicated in its favor, its obligation to pay defense costs remained in effect. *Id.* at 402. Specifically, the court recognized that "the duty to defend or pay defense expenses turns solely on whether, as to each of the underlying actions, the complaint alleges any facts or grounds that bring the action within the liability coverage purchased." *Id.* It then stated, in language also applicable here, that

> under a directors and officers liability policy calling for the reimbursement
> of defense expenses . . . insurers are required to make contemporaneous
> interim advances of defense expenses where coverage is disputed, subject
> to recoupment in the event it is ultimately determined no coverage was

> afforded.  The duty to pay arises at the time the insured becomes legally obligated to pay.

*Id.* at 403 (internal quotation marks and citations omitted).

Other courts in New York also have held that an insurance company's attempt to deny coverage or rescind its policy did not affect the duty of advancement.  *See*, *e.g.*, *PepsiCo. Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 660 (S.D.N.Y. 1986) (finding ongoing duty to pay defense costs as incurred in securities fraud action, when insurer was obligated under policy to pay costs unless a final judgment found "material dishonesty" by directors and officers); *Trs. of Princeton Univ.*, 2007 WL 1063870 at *5 ("Where coverage is disputed, insurers are required to make contemporaneous interim advances of defense expenses subject to recoupment in the event it is ultimately determined the Policy does not cover the claim.").

Courts outside New York are also in accord.  *See*, *e.g.*, *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 794 (3d Cir. 1987) ("[I]mposing upon the insurer a duty to pay loss as the insured incurs legal obligation for such loss, subject to [recoupment]"); *G-I Holdings, Inc. v. Reliance Insurance Co.,* 2006 U.S. Dist. LEXIS 17597, at *7-8 (where underlying action fell within insuring agreement in D&O policy, insurer was obligated to advance defense costs notwithstanding potential application of exclusion in policy); *Newby v. Enron Corp.* (*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*), 391 F. Supp. 2d 541, 573 (S.D. Tex. 2005) (insurers, regardless of policy exclusion for "dishonesty," had duty to reimburse defense costs as incurred until final adjudication of criminal proceedings); *Rigas*, 382 F. Supp. 2d at 702 (rejecting insurer's attempt to refuse payment of defense costs based on unilateral rescission of policy and insurer's decision that exclusions were applicable until further adjudication as to lack of coverage).

**B.    The Axis and WorldCom Policy Provisions Are Substantially Similar**

Axis argues that the rule on advancement enunciated in *WorldCom* does not apply because the advancement provision in the Axis Policy is materially different than the advancement provision in the policy interpreted by Judge Cote.  (Appeal at 14-17.)  The relevant provisions are:

| WorldCom Policy | Axis Policy |
|---|---|
| Under both Coverage A and Coverage B of this policy, except as hereinafter stated, the Insurer shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim.  Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.  354 F. Supp. 2d at 459. | The Insurer will pay covered Defense Costs on an as-incurred basis.  If it is finally determined that any Defense Costs paid by the insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.  (Axis Desig. Item 2, Condition (D)(2) at p. 8) |

Under the Axis Policy, the "Insurer will pay covered Defense Costs on an as-incurred basis.  If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer."  (Axis Desig. Item 2 at 8.)  Axis argues that the use of the word "covered" in the first sentence means that defense costs need not be advanced until there is a final adjudication of coverage and that the *WorldCom* policy does not contain such a provision.  The Bankruptcy Court considered and rejected this argument, concluding that the difference in language between the two policies was immaterial.

In particular, the *WorldCom* policy provided "[u]nder both Coverage A and Coverage B of this policy, except as hereinafter stated, the Insurer shall advance, at the written

request of the Insured, Defense Costs prior to the final disposition of a Claim."  354 F. Supp. 2d

at 459 (emphasis omitted); Appeal at 16.  The use of the phrase "[u]nder both Coverage A and

Coverage B" in the *WorldCom* policy means that advances need be made only for defense costs

that fall within the coverage of the policy.  Thus, the language is substantially equivalent to the

phrase "covered Defense Costs" in the Axis Policy.  Moreover, the duty to advance under the

WorldCom policy "prior to the final disposition of a Claim" is not materially different from the

requirement under the Axis Policy to advance defense costs "as incurred," subject to the second

sentence which requires the repayment of advanced Defense Costs if it is finally determined that

such costs are not covered under the policy.  As explained by the Bankruptcy Court,

> I do not believe the language, which, again, requires payment on an "as
> incurred," basis is materially different from the language quoted by Judge
> Cote in the <u>WorldCom</u> case and would need to be far clearer to create an
> exclusion here.

(Axis Desig. Item 21 at 66: 1-5.)

In addition to asserting that the terms of the policy in *WorldCom* are materially

different, Axis argues that this Court should disregard *WorldCom* because the insurer in that case

sought to rescind the policy, and not invoke an exclusion.  Whether styled as a rescission action

or an action to exclude a claim, an insurer's efforts to contest payment to an insured does not

obviate the insurer's obligation to advance defense costs pending adjudication of the contested

matter.  The Bankruptcy Court did not misinterpret the *WorldCom* case, as Axis suggests.

Rather, the Bankruptcy Court understood that the *WorldCom* case involved rescission – as

opposed to the application of an exclusion – and concluded that such distinction is "not

meaningful."  (*Id.* at 62: 13-25.)  The Bankruptcy Court also noted that

> [i]n either case [rescission or exclusion], the issue hinged upon whether
> the insurer could unilaterally act to withhold payment based on its
> interpretation of whether it was obligated to pay: here, whether the claim
> were excluded from coverage, in WorldCom, whether the policy was void

ab initio.  I believe Judge Cote's logic in finding a duty to pay pending judicial determination of the underlying dispute would apply under either scenario.

(Axis Desig. Item 36, Ex. A at 18: 8-15.)

### C. Axis's Construction of the D&O Policies Is Inconsistent with the Unambiguous Terms of the Policies

Axis argues that the Bankruptcy Court, in reaching its decision, deleted the word "covered" from the first sentence of Condition (D)(2), thus interpreting the Axis Policy to provide a benefit to the Insureds to which Axis did not subscribe and which the Insureds did not purchase.  (Appeal at 18.)  Axis is incorrect, and in fact, the Bankruptcy Court's interpretation of Condition (D)(2) is correct.

According to Axis, advancement of covered defense costs is required only if *Axis* unilaterally determines that no exclusions in the Primary Policy or the Axis Policy apply to bar coverage.  (Appeal at 4, 13-14.)  If Axis determines that an exclusion is triggered, then according to Axis, there is no coverage.  The Insureds reject this narrow view.  Rather, as long as the claim falls within the policy's insuring agreement, it is covered *unless and until* there is a final determination that an exclusion applies.  Normally, this difference in position can be resolved by a declaratory action filed by either party.  However, in the present situation, where the exclusions asserted by Axis depend on disputed facts that substantially overlap the Underlying Actions, there is a gap between a determination of initial coverage and a final determination on whether any exclusions apply.  Axis would prefer its interpretation because it puts the burden of that delay on the Insureds – just when they need the advancement of defense costs the most.  But the law in New York is to the contrary – advancement of defense costs are required pending final determination of coverage.  *See WorldCom*, 354 F. Supp. 2d 455.

Adopting the Insureds' interpretation, the Bankruptcy Court neither deleted the word "covered" nor construed the meaning differently in the first and second sentences of Condition (D)(2). The Bankruptcy Court's interpretation of the Primary Policy recognizes that for purposes of advancement, defense costs initially are "covered," even though at some future time they may be determined to be "non-covered."[9]

This view is supported by the second sentence of Condition (D)(2), which requires that costs advanced must be returned if it is ultimately determined that the claims are not covered. Condition (D)(2) explicitly contemplates and governs the situation where, as here, defense costs that fall within the insuring agreements are incurred (thus giving rise to an immediate duty to advance), but the applicability of policy exclusions has not yet finally been determined. As a protection, Condition (D)(2) provides the insurer with the right to get its funds back.

This result is further supported by the fact that the exclusions under the Policy are subject to the obligation to advance. The lead-in to the list of exclusions provides that "[u]nless otherwise specifically stated or provided for *in CONDITION (D)(2)* or elsewhere in this Policy, the Insurer will not be liable to make any payment of Loss in connection with [an excluded] Claim . . . ." (Axis Desig. Item 2 at 4) (emphasis added). The lead-in to the section on Exclusions is important because when read with Condition (D)(2) it indicates that the Insurer *will* be liable to pay the types of Losses provided in Condition (D)(2) – *i.e.*, defense costs – even

---

[9] Notably, the Primary Policy defines "Defense Costs" to include "reasonable fees, costs and expenses . . . resulting from the investigation, adjustment, defense or appeal of a Claim against and Insured Person . . . ." (Axis Desig. Item 2 at Definitions (D).) This definition of Defense Costs thus includes attorneys' fees incurred by the Insureds for both covered claims (*i.e.*, Claims for Wrongful Acts) and non-covered claims (*i.e.*, Claims other than for Wrongful Acts). The word "covered" in the first sentence of Condition (D)(2) of the Primary Policy clarifies that only Defense Costs incurred in connection with Claims that fall within the Insuring Agreements will be paid for by the insurer.

though ultimately it may be determined that such defense costs relate to an excluded claim.  In other words, such defense costs are "covered" for purposes of the Insurer's obligation to advance unless and until a final determination is made that an exclusion applies.

Further, there is no merit to Axis's charge that the Insureds' interpretation of "covered" ignores the applicability of exclusions in the first sentence of Condition (D)(2).  The Insureds readily acknowledge that "covered" in the first sentence includes exclusions, to the extent that the application of an exclusion can be determined at the time Defense Costs are incurred on the face of the pleading in the underlying action for which they are incurred.  In this case, however, Axis's exclusions cannot be determined at this time because the facts necessary to a final determination as to whether the exclusions apply are material to the Underlying Actions.

Axis further argues that the Bankruptcy Court erred by ignoring "the difference between exclusions which explicitly contain a "final adjudication" requirement, and those which do not."  (Appeal at 21-22.)  This issue is a red herring.  Axis is bound by Condition (D)(2) to advance defense costs unless and until there is a final determination of non-coverage.  The fact that certain exclusions also include that requirement is irrelevant.  It also does not matter that one of the exclusions relied on by Axis appears in its excess policy and not the Primary Policy. Exclusions in the Axis Policy are subject to the same conditions as those in the Primary Policy unless the Axis Policy expressly states that such conditions do not apply.  *See Hartford Accident & Indem. Co. v. Pac. Employers Ins. Co.*, 862 F. Supp. 160, 162 (S.D. Tex. 1994) ("Follow-form policies extend the limits and operate under the rules of [the original policy].  Unless there is an express exception to the form of the primary insurance, the excess carrier must act according to the primary insurance policy's terms.").  The Axis Policy contains no such express limitations. Rather, the Axis Policy provides that the provisions of the Primary Policy affecting coverage are

applicable to it, other than as expressly limited by the Axis Policy.  Accordingly, a "final

determination" of non-coverage by a court of law is required.

Axis also contends that the Bankruptcy Court's ruling would mean that if a claim

were made that is indisputably not covered, such as a claim related to the "Edward McElwreath

case" (a prior litigation identified in Endorsement 7 as an exclusion to the policy's coverage),

Axis would be forced to advance defense costs until it was permitted to obtain a judicial

declaration that the exclusion applied.  (Appeal at 22 n. 13.)  Axis's attempt to extrapolate the

consequences of the Bankruptcy Court's ruling into a parade of horribles fails.  If, as Axis

hypothesizes, the Insureds made a claim related to the "Edward McElwreath Case" and Axis

denied such claim, Axis could and no doubt would seek a declaratory judgment in order to have

this exclusion finally determined.  In the case of a claim based on the "Edward McElwreath

Case," the exclusion at issue would not be substantively intertwined with the Underlying

Actions.  Therefore, there would be no need for a court to defer consideration of the exclusion on

the merits, and the declaratory judgment action would be quickly resolved.  Indeed, the

Bankruptcy Court would be able to adjudicate this exclusion on the merits based on the face of

the policy and the underlying claim, and there would have been no occasion to direct

advancement of defense costs pending a determination of coverage."[10]  *See* Section III.D hereof.

Axis also points to Condition (D)(3) of the Primary Policy to support its position

that it unilaterally may decline coverage and refuse to advance the Insureds' defense costs.

(Appeal at 22.)  Condition (D)(3) applies only where a claim includes both a loss covered and a

---

[10] Judge Drain plainly recognized that if the applicability of an exclusion could be determined on
the face of the policy and the complaint in the underlying action, then defense costs would not
have to be advanced for such action.  (Axis Desig. Item 36, Ex. A at 13, 14.)

loss not covered by the policy.[11]  This provision is completely inapplicable here because Axis has denied coverage for all losses and, as such, there is no allocation to perform.  Moreover, if Axis's interpretation of Condition (D)(2) were correct it would not need Condition (D)(3) at all, because Axis could use Condition (D)(2) to deny coverage of a portion of a claim.  In any event, Axis has never invoked Condition (D)(3) to disclaim coverage and cannot do so now.[12]

> **D.**     ***Kozlowski* and *Carlin Equities* Do Not Require the Bankruptcy Court to Determine That the Exclusions Relied on by Axis are Inapplicable Prior to Ordering the Advancement of Defense Costs**

Axis asserts that the decisions in *Kozlowski*, 792 N.Y.S.2d 397 (N.Y. App. Div. 2005) and *Carlin Equities Corp. v. Houston Casualty Co.*, No. 05-cv-9508-LAP, 2007 WL 2456958 (S.D.N.Y. Aug. 24, 2007) stand for the proposition that where an insurer has denied coverage based on any policy exclusion, there is no duty to advance defense costs unless a court has determined that the insurer's coverage position is incorrect.  (Appeal at 25.)  Neither case even remotely stands for that proposition.  Rather, these cases support the Insureds' position that when the applicability of an exclusion involves disputed facts (*i.e.*, facts to be determined in the

---

[11] For example, the Primary Policy specifically excludes coverage for ERISA related claims.  If a complaint in the Underlying Actions alleged violations of both the securities laws and ERISA, then the Insureds' claims would include both covered and non-covered claims.  Based on the exclusions relied on by Axis, the Insureds' claims cannot be bifurcated between covered and non-covered claims.

[12] Even if this Court were to find the policy language to be ambiguous, it is well settled that ambiguities must be construed in favor of the Insureds and against Axis.  *See WorldCom*, 354 F. Supp. 2d at 464 ("To the extent an ambiguity exists . . . such ambiguity is read against the insurer."); *Rigas*, 382 F. Supp. 2d at 698 (holding that because "there are two reasonable interpretations of [a provision in the policy] . . . this part of the policy must be considered ambiguous and must be construed for the Insureds."); *Murphy v. Lexington Ins. Co.*, No. L-5004-06, slip op. at 2 (N.J. Super. Ct. Law. Div. Aug. 3, 2007) (noting that "[u]nder both New York and New Jersey law, any ambiguity in an insurance contract is construed against the insurer in favor of coverage" and holding that the Lexington Excess Policy covers defense costs and fees).  Moreover, the Bankruptcy Court found that Axis "has offered up no extrinsic evidence to support its interpretation of paragraph (d)(2)."  (Axis Desig. Item 36, Ex. A at 13-14, 20.)

Underlying Actions), the insurer must advance defense costs for such action pending the later

determination of coverage.  In contrast, where the applicability of an exclusion can be decided

solely on the basis of the language of the insurance policy and the nature of the underlying claim

(as opposed to the merits of that claim), the applicability of an exclusion can be immediately

determined on the merits.

In *Carlin Equities*, the insurer refused to advance defense costs on the ground that

the "Errors and Omissions" exclusion barred coverage.  The "Errors and Omissions" exclusion

provided that no coverage was available for any claim against a non-director or non-officer based

on actions taken in connection with the rendering of services for a fee.[13]  *Id.* at *6. In considering

whether that exclusion was applicable, Judge Preska solely looked to the allegations in the

underlying actions.  Following the decisions in *WorldCom* and *Federal Insurance Co. v. Tyco

International, Ltd.*, No. 6005007/03, 2004 WL 583829 (N.Y. Sup. Mar. 5, 2004), Judge Preska

stated that the advancement of defense costs was required under the policy unless the allegations

in the underlying complaint "'cast that pleading solely and entirely within the policy

exclusions.'"  *Id.* at *7 (quoting *Tyco*).  The complaint named both the chief operating officer

and a non-officer employee and the court concluded that, although Carlin is alleged to have

earned fees from the acts complained of, the D&O policy exclusion rendered the non-officer

employee without coverage and only covered the chief operating officer.  *Carlin*, 2007 WL

2456958 at *7.

---

[13] Specifically, the exclusion provided that "[n]o coverage will be available under this Policy for
Loss, including Defense Costs, from Claims for any actual or *alleged* act . . . in connection with
the rendering of . . . any services for others for a fee or commission . . . ." *Carlin*, 2007 WL
2456958 at *4 (emphasis added).  The "management carveback" stated that "[the Errors and
Omissions Exclusion] is not intended, however . . . to apply to Loss, including Defense Costs, in
connection with any Claim against an Insured Person who is a director or officer of the Insured
Organization to the extent that such Claim is for a Wrongful Act by such Insured Person . . . ."
*Id.*

Critically, the court in *Carlin Equities* did not determine any disputed facts in order to establish the applicability of the exclusion in the coverage litigation, as Axis seeks to do here. In fact, the Insureds are not aware of any case – and Axis cites none – in which advancement was denied based on a disputed exclusion or based on an exclusion that requires proof of a disputed fact.

Finally, as Axis points out (Appeal at 24), the policy language with respect to the advancement of defense costs in *Carlin Equities* was identical to the language in Condition (D)(2) (requiring the advancement of "covered Defense Costs on an as-incurred basis"). *Id.* at *4. This similarity, however, was irrelevant to the *Carlin Equities* court's ability to adjudicate the applicability of the exclusion in that case.

Nor does *Kozlowski* further Axis's arguments. Rather, as set forth above, the Appellate Division held in *Kozlowski* that where an insurer disputes coverage based on an exclusion, it must advance defense costs unless it is clear from the face of the complaint in the underlying action that the claim cannot fall within the coverage of the policy. 792 N.Y.S.2d at 402-03. Axis's selective quote from *Kozlowski* (Appeal at 24) suggests that the court affirmatively considered the personal profit exclusion on the merits. *Id.* Based on a fuller quote, it is clear that the court could not determine the effect of the personal profit exclusion on the ultimate issue of coverage.

> Thus, while Federal must pay defense costs as they are incurred in the securities action and the criminal proceeding, its ***ultimate*** liability for such costs is only with respect to such liabilities as fall under the coverage provided. To the extent such liabilities are excluded from coverage by the personal profit exclusion, Federal is not required to pay for defense costs. Since this allocation [of covered and non-covered matters] cannot be made at this juncture and the duty to defend is broader than the duty to indemnify, ***Federal must pay all defense costs as incurred***, subject to recoupment . . . .

*Id.* at 404 (emphasis added). Contrary to Axis's argument, nothing in the *Kozlowski* decision requires the determination of an exclusion which rests on proof of disputed facts as a prerequisite to obtaining the advancement of defense costs.

In the present case, the Bankruptcy Court ruled that the applicability of the particular exclusions relied on by Axis in denying coverage cannot be determined before the substantially similar issues are resolved in the Underlying Actions. In those circumstances, the Bankruptcy Court, following the precedent in *WorldCom*, *Kozlowski*, *Rigas*, and other cases, properly held that advancement of defense costs was required until a determination on the exclusions could be made.

## IV.      Public Policy Supports the Bankruptcy Court's Decision to Require Axis to Advance Defense Costs

Axis's assertion that it has the unilateral and unfettered right to determine "coverage" for purposes of advancing defense costs is contrary to the Insureds' reasonable expectations in having D&O coverage and conflicts with long-standing public policy which prohibits insurance carriers from summarily denying the advancement of defense costs.

Refco obtained D&O liability insurance for its officers and directors in order to insure them against claims of wrongful conduct. As a key component of such insurance (and often, the only part of relevance), the directors and officers are entitled to be paid defense costs, as incurred. The claims arising from the Underlying Actions are precisely the types of claims for which the Insureds would have thought themselves covered. As discussed by the court in

*Thomas J. Lipton, Inc. v. Liberty Mutual Insurance Co.*,

> [w]e cannot think that, given the economic and factual setting in which
> these policies were written, an ordinary business man in applying for
> insurance and reading the language of these policies when submitted,
> would not have thought himself covered against precisely the damage
> claims now asserted [against the insured].

314 N.E.2d 37, 39 (N.Y. 1974) (rejecting insurer's interpretation of insurance policy to exclude

coverage for the claims at issue which would have rendered the coverage illusory).

       If Axis had the unilateral right to withhold defense costs simply because it alleged

that a coverage exclusion was applicable – or even where no such allegation had been made (as

Axis does not assert its unilateral decision-making is restricted to when exclusions are alleged) –

then the insurance would be illusory, and the Insureds would be left with no recourse.  Prior to

trial, innocent directors and officers would be deemed guilty . . . by the insurer!  Axis's position

would render its policy "phantom insurance."  *See Nat'l Union Fire Ins. Co. v. Xerox Corp.*, 792

N.Y.S.2d 772, 782 (N.Y. Sup. Ct. 2004).  Axis's position is not and cannot be correct.  "[T]o

hold otherwise would not provide insureds with protection from financial harm that insurance

policies are presumed to give . . . ."  *Nu-Way Envtl., Inc. v. Planet Ins. Co.*, No. 95 Civ. 573,

1997 WL 462010, at *3 (S.D.N.Y. Aug. 12, 1997).

       Such action by an insurer not only renders the very insurance (purchased for a

hefty premium) worthless, but has the potential to chill the willingness of qualified individuals to

serve as directors and officers.  As noted by Judge Cote in *WorldCom*,

> D&O insurance is not only designed to provide financial security for the
> individual insureds, but also plays an important role in corporate
> governance in America.  Unless directors can rely on the protections given
> by D&O policies, good and competent men and women will be reluctant
> to serve on corporate boards.

354 F. Supp. 2d at 469.  Moreover, these policy considerations outweigh Axis's concerns

regarding whether the individual Insureds have sufficient funds to pay their own legal fees.  *Id.* at

470.  D&O insurance should be available regardless of personal wealth; however, directors and

officers who are not independently wealthy are precisely those who most need advancement of

defense costs.

*WorldCom* is not the only decision emphasizing the importance of public policy. In *Little v. MGIC Indemnity Corp.*, the court concluded that, if a D&O insurer could "withhold payment whenever charges of intentional dishonesty are leveled against directors and officers . . . then [D&O] insurers would be able to withhold payment in virtually every case" and expose directors and officers to "staggering" defense costs and "financial ruin." 649 F. Supp. 1460, 1468-69 (W.D. Pa. 1986), *aff'd*, 836 F.2d 789 (3d Cir. 1987). Additionally, in the *Enron* securities litigation, the court took note of public policy concerns relating to the insurers' advancement of defense costs in reaching its conclusion that insurers were required to pay legal fees until criminal proceedings pending against insureds were concluded and a final adjudication had been made. *See Enron*, 391 F. Supp. 2d at 574 (citing *Little*, 649 F. Supp. at 1468-69); *see also Xerox*, 792 N.Y.S.2d at 775 ("In these circumstances, National's position would render this policy to be 'phantom' insurance.").

Axis's point that D&O insurance is voluntary and that the Insureds do not have a legal "right" to such insurance is irrelevant because Refco purchased D&O coverage for the Insureds. Accordingly, the Insureds are entitled to receive the benefits they contracted for and Axis must fulfill its contractual obligations, including its duty to advance defense costs to the Insureds, as incurred.

## CONCLUSION

As a matter of law, the Insureds are contractually entitled to have their defense costs borne by Axis and the other D&O insurers, unless and until a final determination of non-coverage is made. The parties have contracted to address the very situation in which Axis now finds itself (where coverage has yet to be determined) and, by the terms of its bargain, Axis must advance defense costs. For this reason, U.S. Specialty and Lexington have already advanced defense costs and, as nothing in the Axis Policy exempts it from the Primary Policy's

requirements, Axis may not reject its obligation to do the same. For the reasons discussed in the argument above, Axis's appeal from the Bankruptcy Court's grant of summary judgment should be denied.

Dated:  December 21, 2007
        New York, New York

/s/ Michael F. Walsh
Greg A. Danilow, Esq. (GD 1621)
Michael F. Walsh, Esq. (MW 8000)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Appellees Leo R. Breitman,
Nathan Gantcher, David V. Harkins,
Scott L. Jaeckel, Thomas H. Lee,
Ronald L. O'Kelley, and Scott A. Schoen*

/s/ Helen B. Kim
Helen B. Kim, Esq. (HK 8757)

BAKER & HOSTETLER LLP
12100 Wilshire Blvd., Suite 1500
Los Angeles, CA  90025
Telephone: (310) 979-8460
Facsimile: (310) 820-8859

*Attorneys for Appellee Dennis A. Klejna*

/s/ Laura E. Neish
Norman L. Eisen, Esq.
Thomas G. Macauley (TM 3944)
Laura E. Neish (LN 0040)

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, NY  10036
Telephone: (212) 704-9600

*Attorneys for Appellee Tone N. Grant*

/s/ Ivan Kline
Stuart I. Friedman, Esq. (SF 9186)
Ivan Kline, Esq. (IK 9591)

FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY  10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391

*Attorneys for Appellees William M.
Sexton and Gerald M. Sherer*

/s/ Jeffrey T. Golenbock
Jeffrey T. Golenbock, Esq. (JG 2217)
Deborah A. Adler (DA 8587)

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
437 Madison Avenue, 35th Floor
New York, NY  10022
Telephone: (212) 907-7300

*Attorneys for Appellee Phillip R. Bennett*

/s/ Barbara Moses
Barbara Moses, Esq. (BM 2952)
Rachel Korenblat, Esq. (RK 0170)

MORVILLO, ABRAMOWITZ,
GRAND, IASON, ANELLO &
BOHRER, P.C.
565 Fifth Avenue
New York, NY  10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494

/s/ John J. Jerome
John J. Jerome (JJ 2413)
Timothy E. Hoeffner (TH 4195)

SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, NY 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920

*Attorneys for Appellee Joseph Murphy*

/s/ Richard Cashman
Richard Cashman, Esq. (RC 4769)

HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: (212) 832-8300
Facsimile: (212) 763-7600

*Attorneys for Appellee Philip Silverman*

/s/ Gabriel Del Virginia
Gabriel Del Virginia, Esq. (GV 4951)

LAW OFFICES OF GABRIEL DEL
VIRGINIA
641 Lexington Avenue, 21st Floor
New York, NY  10022
Telephone: (212) 371-5478

*Co-Attorneys for Appellee Robert C.
Trosten*