WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Greg A. Danilow (GD 1621)
Michael F. Walsh (MW 8000)

Attorneys for Appellees Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen

BAKER & HOSTETLER LLP
12100 Wilshire Blvd., Suite 1500
Los Angeles, CA  90025
Telephone: (310) 979-8460
Facsimile: (310) 820-8859
Helen B. Kim (HK 8757)

Attorneys for Appellee Dennis A. Klejna

SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, NY 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920
John J. Jerome (JJ 2413)

Attorneys for Appellee Joseph Murphy

FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY  10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391
Stuart I. Friedman (SF 9186)
Ivan Kline (IK 9591)

Attorneys for Appellees William M. Sexton and Gerald M. Sherer

HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: (212) 832-8300
Facsimile: (212) 763-7600
Richard Cashman (RC 4769)

Attorneys for Appellee Philip Silverman

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, NY  10036
Telephone: (212) 704-9600
Norman L. Eisen (NE 1198)
Thomas G. Macauley (TM 3944)
Laura E. Neish (LN 0040)

Attorneys for Appellee Tone N. Grant

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue, 35th Floor
New York, NY  10022
Telephone: (212) 907-7300
Jeffrey T. Golenbock (JG 2217)
Adam C. Silverstein (AS 4876)

Attorneys for Appellee Phillip R. Bennett

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, NY  10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
Barbara Moses (BM 2952)
Rachel Korenblat (RK 0170)

- and -

LAW OFFICES OF GABRIEL DEL VIRGINIA
641 Lexington Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 371-5478
Gabriel Del Virginia (GV 4951)

Co-Attorneys for Appellee Robert C. Trosten

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

AXIS REINSURANCE COMPANY,

            Appellant,

            v.

PHILLIP R. BENNETT, *et al.*,

            Appellees.

-----------------------------------------------------------------x

No. 07-CV-7924 (GEL)

[caption continued on next page]

**APPENDIX OF UNREPORTED CASES CITED IN SUPPORT OF APPELLEES' JOINT RESPONSE TO AXIS REINSURANCE COMPANY'S APPEAL FROM THE BANKRUPTCY COURT'S ORDERS DISMISSING AXIS'S COMPLAINT AND GRANTING <u>APPELLEES' MOTIONS FOR SUMMARY JUDGMENT</u>**

```
-----------------------------------------------------------x
In re                                                      :
                                                           :    Chapter 11
REFCO, INC., et al.,                                       :    Case No. 05-60006 (RDD)
                                                           :    (Jointly Administered)
                    Debtors.                               :
-----------------------------------------------------------x
AXIS REINSURANCE COMPANY,                                  :
                                                           :
                    Plaintiff,                             :
                                                           :    Adv. Proc. No. 07-01712 (RDD)
              v.                                           :
                                                           :
PHILLIP R. BENNETT, et al.,                                :
                                                           :
                    Defendants.                            :
-----------------------------------------------------------x
TONE N. GRANT, et al.,                                     :
                                                           :
                    Plaintiffs,                            :
                                                           :
              v.                                           :    Adv. Proc. No.  07-2005 (RDD)
                                                           :
AXIS REINSURANCE COMPANY,                                  :
                                                           :
                    Defendant.                             :
-----------------------------------------------------------x
LEO R. BREITMAN, et al.,                                   :
                                                           :
                    Plaintiffs,                            :
                                                           :
              v.                                           :    Adv. Proc. No.  07-2032 (RDD)
                                                           :
AXIS REINSURANCE COMPANY,                                  :
                                                           :
                    Defendant.                             :
-----------------------------------------------------------x
AXIS REINSURANCE COMPANY,                                  :    (1) No. 07-CV-9420 (GEL)
                                                           :    (2) No. 07-CV-9842 (GEL)
                    Plaintiff,                             :    (3) No. 07-CV-10302 (GEL)
                                                           :
              v.                                           :
                                                           :
PHILLIP R. BENNETT, et al.,                                :
                                                           :
                    Defendants.                            :
-----------------------------------------------------------x
TONE N. GRANT, et al.,                                     :
                                                           :
                    Plaintiffs,                            :
                                                           :
              v.                                           :    No. 07-CV-9843 (GEL)
                                                           :
AXIS REINSURANCE COMPANY,                                  :
                                                           :
                    Defendant.                             :
-----------------------------------------------------------x
```

# INDEX TO UNREPORTED CASES

**CASES**                                                                                                                        **TAB**

*Carlin Equities Corp. v. Houston Cas. Co.*,
    No.05-cv-9508-LAP, 2007 WL 2456958 (S.D.N.Y. Aug. 24, 2007) ........................................1

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
    No. 00-cv-6189 (DMC), 2006 U.S. Dist. LEXIS 17597 (D.N.J. Mar. 22, 2006) ....................2

*Murphy v. Lexington Ins. Co.*,
    No. L-5004-06 (N.J. Super. Ct. Law Div. Aug. 3, 2007) .........................................................3

*Nu-Way Envtl., Inc. v. Planet Ins. Co.*,
    No. 95 Civ. 573, 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997) ................................................4

*Sun-Times Media Group, Inc. v. Royal & SunAlliance Ins. Co.*,
    No. 06C-11-108-RRC, 2007 WL 1811265 (Del. Super. Ct. June 20, 2007) ...........................5

# Tab 1

Slip Copy
(Cite as: 2007 WL 2456958 (S.D.N.Y.))

Page 3

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

CARLIN EQUITIES CORP., Plaintiff,
v.
HOUSTON CASUALTY CO., Defendant.

No. 05 Civ. 9508(LAP).

Aug. 24, 2007.

MEMORANDUM AND ORDER

LORETTA A. PRESKA, U.S.D.J.

*1 This action arises out of the refusal of Defendant Houston Casualty Co. ("Houston"), a Texas property and casualty company, to pay defense costs to Plaintiff Carlin Equities Corp. ("Carlin"), a corporation organized under the Business Corporation Law of New York. In 2003, Carlin purchased a Directors, Officers and Private Organization Liability Insurance Policy Number 14-MG-03-A1734 ("the Houston Policy") from Houston. Carlin was sued, along with others, in an action entitled Hayim A. Regensberg v. Generic Trading of Philadelphia, LLC, Carlin Equities Corp., Shear Offman Inc., Ronald Shear and Donald Motschwiller (the "Regensberg Suit") in the Supreme Court of the State of New York. Regensberg asserts in that action that he opened an account with Defendants for the purpose of engaging in day trading and that Carlin and the other named Defendants encouraged him to engage in trading in excess of his financial resources, resulting in an alleged financial loss of $3.5 million between January 1999 and December 2001. (Regensberg Complaint ¶¶ 15, 17, 18.) [FN1]

> FN1. "Regensberg Complaint" refers to the Complaint filed in the underlying dispute of Hayim A. Regensberg v. Generic Trading Philadelphia, LLC, et al., which is attached as Exhibit B to the Affirmation of Craig M. Hirsch, Esq., in Support of Motion for Partial Summary Judgment, dated December 29, 2006, ("Hirsch Aff.").

Carlin now moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that it is entitled to reimbursement and advancement of defense costs by Houston in connection with the Regensberg Suit under the law of New York [FN2] and the plain terms of the Houston Policy. Carlin contends that both New York law and the Houston Policy provide for the contemporaneous payment of defense costs to Carlin subject to potential repayment after a final determination of the pending suit. Houston argues that no payment is required because there is no coverage.

> FN2. The parties seem to agree that New York law is applicable.

Jurisdiction and Venue

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. Specifically, this Court has jurisdiction because Plaintiff is a New York corporation and Defendant is a Texas company and the amount in controversy exceeds $75,000. Venue is proper in this district because Plaintiff's principal place of business is in New York County and that is also where the Houston Policy was purchased.

Factual Background

A. The Underlying Dispute

On October 10, 2003, Hayim A. Regensberg filed the Regensberg Suit against Carlin and related individuals and entities. (Carlin 56.1 Stmt. ¶ 1.) [FN3] In addition to Carlin, Defendants in the Regensberg Suit are Generic Trading of Philadelphia, LLC, Shear Offman, Inc., Ronald Shear and Donald Motschwiller. The underlying Defendants filed an Answer to the Regensberg Complaint on November 17, 2003. (Regensberg Answer.) [FN4] Defendant Generic Trading of Philadelphia, LLC, ("Generic Trading") is organized under the laws of the State of Delaware with its principal place of business in the State of New York, County of New York, and is a securities brokerage firm set up for qualifying individuals to trade broker-dealer capital. (Regensberg Complaint, ¶ 4.) Defendant Shear Offman, Inc., ("Shear Offman") is organized under the laws of the State of Delaware and is the Managing Member of Generic Trading and controls Carlin. (Regensberg Complaint, ¶ 6.) The Regensberg Answer asserts that "Shear Offman is ... the managing member of Generic." (Regensberg Answer, ¶ 6.) Defendant

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy
(Cite as: 2007 WL 2456958, *1 (S.D.N.Y.))

Page 4

Ronald Shear ("Shear") is an individual with offices in the State of New York, County of New York, and controls Shear Offman and is Chief Compliance Officer of Generic Trading and of Carlin. (Regensberg Complaint, 17,) Defendant Donald Motschwiller ("Motschwiller") is an individual with offices in the State of New York, County of New York, and is "affiliated" with Generic Trading and with Carlin. (Regensberg Complaint, ¶ 8.)

> FN3. "Carlin 56.1 Stmt." refers to Carlin Equities Corporation's Statement Pursuant to Local Civil Rule 56.1(a) in support of its Motion for Partial Summary Judgment. The material facts recounted herein are undisputed, unless otherwise noted.
>
> FN4. "Regensberg Answer" refers to the Verified Answer and Counterclaims in the Regensberg Suit, attached as Exhibit C to the Hirsch Aff.

*2 The Regensberg Suit currently is pending before the Supreme Court of the State of New York. (Carlin 56.1 Stmt. ¶ 1.) In his complaint, Regensberg alleges that Carlin and the other Defendants designated his account as a broker-dealer account, even though he was not a registered representative or otherwise qualified to have such an account and that, as a result of this broker-dealer designation, they were able to advance Regensberg credit for day trading at margin levels which otherwise would not have been available to him. (Regensberg Complaint, ¶¶ 13, 14.) With Shear's approval, Motshcwiller allegedly was responsible for permitting Shear Offman to open the account complained of for Regensberg. (Regensberg Complaint, ¶ 8.) Regensberg further alleges that the Defendants in the Regensberg Suit encouraged and permitted him to engage in excessive trading at unsuitable margin levels, that, as a result, he was exposed to an unacceptable level of risk, and that Defendants were able to earn excessive commission revenues associated with the excessive trading. (Regensberg Complaint, ¶ 16.)

The Regensberg Complaint alleged that Carlin and the other Defendants committed "Wrongful Acts," including fraudulent and non-negligent conduct with various levels of scienter, and asserted multiple causes of action against Defendants without specifying which Defendant is responsible for which alleged acts. (Carlin 56.1 Stmt. ¶ 3.) The Regensberg Complaint alleged that: (1) Defendants breached the agreement and the implied covenant of good faith and fair dealing by opening and maintaining an account in violation of applicable rules and regulations (Regensberg Complaint, ¶ 21); (2) Defendants' breach of contract defeated the purpose of the contract (Regensberg Complaint, ¶ 24); (3) Defendants breached certain duties including, inter alia, the duty to "know their customer" and to deal fairly with Regensberg and refrain from encouraging and permitting unsuitable trading (Regensberg Complaint, ¶ 28); (4) Defendants knew or should have known that opening the account and providing Regensberg with unacceptable levels of leverage was unsuitable for Regensberg (Regensberg Complaint, ¶ 32); (5) Defendants entrusted Regensberg with a broker-dealer account which created an unreasonable risk of harm to him (Regensberg Complaint, ¶ 41); and (6) Defendants have been unjustly enriched at Regensberg's expense and equity and good conscience demands that the Defendants not retain the commissions revenue received. (Regensberg Complaint, ¶ 44.)

On January 9, 2004, Houston informed Carlin that it was denying insurance coverage under the Houston Policy for any loss arising from the Regensberg Complaint. (Carlin 56.1 Stmt. ¶ 5.) This action followed.

B. The Houston Policy

Houston issued and delivered to Carlin the Houston Policy, which insured Carlin and others named or identified in the Policy for loss, including defense costs, for "Wrongful Acts." (Carlin 56.1 Stmt. ¶ 4.) The Houston Policy, a claims made policy (Houston Policy at p. 2), was in effect when the Regensberg Complaint and Regensberg Answer were filed, [FN5] (Carlin 56.1 Stmt. ¶ 4.) The Houston Policy defines "Loss" as:

> FN5. The Houston Policy is attached as Exhibit A to the Declaration of Mary E. Borja, Esq., dated January 30, 2007, ("Borja Decl."), which includes the Houston Policy Declarations and Carlin's Renewal Application, items not present in the copy of the Houston Policy submitted by Plaintiff Carlin. As the Court referred to these additional documents, it will cite to the copy of the Houston Policy submitted by Ms. Borja.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy                                                                                           Page   5
(Cite as: 2007 WL 2456958, *3 (S.D.N.Y.))

**\*3** Defense costs and any damages, settlements, judgments, back pay awards and front pay awards or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that an Insured is legally obligated to pay as a result of any Claim; provided, that Loss will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed. For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any Claim shall be Insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such Claim and is most favorable to the Insureds in that regard.
(Houston Policy at p. 4.)

The Houston Policy offers two types of coverage: Insuring agreement (A) provides that "the Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims first made against them during the Policy Period or Discovery Period (if applicable) for Wrongful Acts." (Houston Policy at p. 2) (emphasis added). Insuring agreement (B) provides that "the Insurer will pay to or on behalf of the Insured Organization Loss arising from Claims first made against them during the Policy Period or Discovery Period (if applicable) for Wrongful Acts." (Id. at p. 2) (emphasis added). The Houston Policy defines Insured Organization as "Named Organization and any Subsidiary thereof." (Id. at p. 4.). Here, Carlin is the Named Organization. (See Declarations, bates stamp no. 000000, Ex. A of Borja Decl. at 3.) The Houston Policy defines Insured Person as "any past, present or future director, officer, managing member, manager or Employee of the Insured Organization, including any person in a position which is the functional equivalent thereof with respect to any entity included within the definition of Insured Organization located outside the United States." (Houston Policy at p. 4.) According to the Houston Policy, Subsidiary means any entity:
  (1) during any time on or before the inception of the Policy Period in which the Named Organization has or controls, either directly or indirectly through one or more Subsidiaries, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers; or
  (2) subject to Condition (F)(3), created or acquired during the Policy Period during any time in which, as a result of such creation or acquisition, the Named Organization has or controls, either directly or indirectly through one or more Subsidiaries, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers.
(Id. at p. 5.)

The Houston Policy defines "Wrongful Act" as:
(1) any Employment Practices Wrongful Act (a) by the Insured Organization, or (b) by an Insured Person in his or her capacity as a director, officer, member, manager or Employee of the Insured Organization; (2) any other actual or alleged act, error, misstatement, misleading statement, omission or breach of duty (a) by the Insured Organization, or (b) by an Insured Person in his or her capacity as a director, officer, member, manager or Employee of the Insured Organization or in an Outside Capacity; or (3) any matter claimed against an Insured Person solely by reason of his or her service (a) as a director, officer, member, manager or Employee of the Insured Organization, or (b) in an Outside Capacity.
**\*4** (Id. at p. 6.)

The Houston Policy contains an endorsement (the "Endorsement") entitled "Errors and Omissions Exclusion (With Management Carveback)." (Houston Policy, Endorsement Number: 1.) The Endorsement states:
  (1) No coverage will be available under this Policy for Loss, Including Defense Costs, from Claims for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for others for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under this Policy.
(Endorsement Number: 1, bates stamp no. 000001, Ex. A of Borja Decl. at 4.) Part two of the Endorsement is the Management Carveback, which states:
  (2) Paragraph (1) is not intended, however, nor shall it be construed, to apply to Loss, including Defense Costs, in connection with any Claim against an Insured Person who is a director or officer of the Insured Organization to the extent

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy  
(Cite as: 2007 WL 2456958, *4 (S.D.N.Y.))

Page 6

that such Claim is for a Wrongful Act by such Insured Person who is a director or officer of the Insured Organization in connection with the management or supervision of any division, Subsidiary or group of the Insured Organization offering any of the aforementioned services.  
(Id.)

As to defense costs, the Houston Policy states, "The Insurer will pay covered Defense Costs on an as-incurred basis." (Houston Policy at p. 12.) According to the Houston Policy, "If it is later determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer." (Id.) As a result of this provision, Carlin asserts that Houston must reimburse and advance Carlin's defense costs unless and until there is a final determination of non-coverage. (Carlin 56.1 Stmt. 18.)

Discussion

I. Legal Standard for Summary Judgment

"Summary Judgment is proper 'if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). A motion for summary judgment will be granted when the record is taken as a whole and a rational trier of fact could not find that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Id. (quoting Fed.R.Civ.P. 56(e)). On summary judgment, the inferences drawn shall be viewed in the light most favorable to the party opposing the motion. Id. Summary judgment is therefore appropriate if the evidence requires that a reasonable factfinder would be "compelled to accept the view of the moving party." This is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir.1998). In this case, the question before the Court is whether there is a genuine issue of material fact as to whether Defendant's decision to deny payment of defense costs to Plaintiff in the Regensberg Suit was a breach of the Houston Policy.

II. Application

A. "Insured Persons" and "Insured Organizations"

*5 The parties are in agreement that according to the Insuring Agreements, see supra p. 9, Carlin is an "Insured Organization" because it is the named organization on the Houston Policy. The parties also are in agreement that Shear, in his role as Chief Compliance Officer of Generic Trading and Carlin, is an "Insured Person" because he is clearly a "past present or future director, officer, managing member, manager, or Employee of the Insured Organization ...." Further, as alleged in the Regensberg Complaint, Motschwiller is a registered representative and employee of Carlin and therefore is an "Insured Person" under the Houston Policy as well.

Shear Offman and Generic Trading cannot be "Insured Organizations" because they are not named organizations on the Houston Policy and are not subsidiaries of Carlin within the meaning of the Houston Policy. Plaintiff argues that Shear Offman is a subsidiary based on its alleged control of Carlin. However, when Carlin submitted its Renewal Application to Houston in order to renew its Policy, Carlin responded that the section requiring a list of subsidiaries was not applicable, thus indicating that Carlin did not have any subsidiaries within the meaning of the Houston Policy. (Renewal Application at p. 1.) [FN6]

> FN6. Neither Generic Trading, Shear Offman, nor any other entity was listed as a subsidiary on Carlin's Renewal Application or on its financial statements. (Exs. A and B, respectively to the Borja Decl.)

Carlin notes that its financial statements for the year ended December 31, 2001, state the following under "Related Party Transactions:" "The company earned approximately $83.4 million of commissions from Generic Trading of Philadelphia, LLC, a related company whose managing member is a shareholder of the Company." (Ex. B to Borja Decl. at p. 11.) Also, as noted above, the Regensberg Answer asserts that "Shear Offman is ... the managing member of Generic." (Regensberg Answer, ¶ 6.) Such references are insufficient to

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



demonstrate coverage. Carlin makes no showing that Generic Trading or Shear Offman is a subsidiary of Carlin, that is, that Carlin "ha[d] or controll[ed] ... through one or more Subsidiaries, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers ." (Houston Policy at p. 5.) At oral argument, Carlin's counsel argued that the overlapping ownership of Carlin, Generic Trading, and Shear Offman led to the inference of Carlin's control within the meaning of the definition of subsidiary, but the record discloses no basis for inferring the very precise control requirements contained in the Houston Policy definition. Accordingly, neither Shear Offman nor Generic Trading has been shown to be a subsidiary of Carlin within the meaning of the Houston Policy and therefore neither has been shown to be covered under the Houston Policy as an Insured Organization.

B. "Wrongful Acts"

The Insuring Agreements provide that the loss must arise from "Wrongful Acts" in order to be covered under the Houston Policy. According to the definition of "Wrongful Acts" as stated above, the Insured Person must be acting "in his or her capacity as director, officer, member or Employee of the Insured Organization," here, Carlin. Defendant Shear is admitted to be an officer of Carlin (Regensberg Answer, ¶ 7) and, as Chief Compliance Officer of Carlin, is alleged to have acted in his capacity as director, officer, member or Employee of the Insured Organization. (Regensberg Complaint, ¶ 7.) Thus, Shear clearly is alleged to have engaged in a Wrongful Act within the definition in the Houston Policy.

*6 Defendant Motschwiller is alleged to be "affiliated" with Carlin and to have told Regensberg that, "with the knowledge and complete approval of the firm's [i.e., Carlin's] Chief Compliance Officer, defendant Shear, defendants would provide [Regensberg] with legal and appropriate means to gain greater leverage which would result in [Regensberg] earning greater trading profits." (Regensberg Complaint, ¶¶ 8, 35.) The combination of Motshcwiller's "affiliation" with Carlin and his making the representations complained of to Regensberg "with the knowledge and complete approval" of Carlin's Chief Compliance Officer, bring Motschwiller within the definition of "acting in his ... capacity as ... [an] employee" of Carlin. Thus, Motschwiller is alleged to have engaged in a Wrongful Act within the meaning of the Houston Policy.

Houston argues that admissions made by Carlin in the Regensberg Answer pertaining to the duties and responsibilities of Shear and Motschwiller demonstrate that the Houston Policy does not cover these individuals. Regarding Motschwiller, Houston points out that, in an effort by Carlin to avoid liability in the Regensberg Suit, Carlin admits that Motschwiller acted "as an employee of and on behalf of Defendant Generic." (Regensberg Answer, ¶¶ 48, 49.) Regarding Shear, Houston similarly points out that Carlin admits that Shear "acted as an employee of Shear Offman, which was and is the member manager of Defendant Generic," once again apparently in order for Carlin to avoid liability in the Regensberg Suit. (Id. at ¶¶ 50, 51.)

Writing for the Court of Appeals, the late Judge Milton Pollack described an argument such as this one as "farfetched" in United States Fidelity & Guaranty Company v. Executive Insurance Company, 893 F.2d 517, 519 (2d Cir.1990). He wrote: "If an insurer could escape its duty to defend by pointing to denials of liability in a potential insured's answer, it might never have to defend." Id. at 519-20. Applying that reasoning here, admissions made by Carlin in the Regensberg Answer shall not be considered in determining whether the Houston Policy covers the actions alleged in the Regensberg Complaint. Accordingly, the Regensberg Complaint has alleged Wrongful Acts within the meaning of the Houston Policy.

C. "Errors and Omissions Exclusion (with Management Carveback)"

As noted above, the "Errors and Omissions Exclusion (with Management Carveback)" provides:
(1) No coverage will be available under this Policy for Loss, including Defense Costs, from Claims for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for others for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under this Policy.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw

(2) Paragraph (1) is not intended, however, nor shall it be construed, to apply to Loss, including Defense Costs, in connection with any Claim against an Insured Person who is a director or officer of the Insured Organization to the extent that such Claim is for a Wrongful Act by such Insured Person who is a director or officer of the Insured Organization in connection with the management or supervision of any division, Subsidiary or group of the Insured Organization offering any of the aforementioned services.

*7 Houston argues that because Carlin is alleged to have earned fees from the acts complained of, the Exclusion applies. Among other arguments, Carlin argues that the Management Carveback applies because the Claim [FN7] "is for a Wrongful Act by [Shear] who is an officer ... of [Carlin] in connection with the management or supervision of any division ... or group of [Carlin] ...."

> FN7. The parties do not dispute that the Regensberg Suit is a Claim within the meaning of the Policy.

The Errors and Omissions Exclusion must be read as it is written. It has been held that "an insurer can only invoke a policy exclusion to avoid coverage if it can show that 'the allegations in the complaint cast that pleading solely and entirely within the policy exclusions.' " Federal Ins. Co. v. Tyco Int'l Ltd., Index No. 6005007/03, 2004 WL 583829, slip op. at *6 (N.Y.Sup. Mar. 5, 2004) (quoting Int'l Paper Co. v. Continental Cas. Co., 35 N.Y.2d 322, 325 (1974)). In general, under New York law, insurance contracts are to be interpreted in such a way so as to give effect to the intent of the parties as it is expressed in the clear language of the contract. In re Worldcom, Inc. Securities Litigation, 354 F.Supp.2d 455, 464 (S.D.N.Y.2005) (quoting Bowman v. Allstate Ins. Co., 238 F.3d 468, 470 (2d Cir.2001)). Insurance policies are to be construed in favor of the insured, and this rule is applied most strictly in determining the meaning of exclusions or provisions seeking to narrow the insurer's liability. Id. (quoting Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293, 306 (2d Cir.1987)). The duty to pay defense costs must be "construed liberally and any doubts about coverage are resolved in the insured's favor." Id. (quoting Federal Ins. Co. v. Tyco Int'l Ltd., Index Ho. 6005007/03, 2004 WL 583829, slip op. at *6 (N.Y.Sup. Mar. 5, 2004)).

Seidel v. Houston Casualty Company, 375 F.Supp.2d 211, 223 (S.D.N.Y.2005), is an analogous case in which the same Defendant, Houston, refused further coverage of defense costs to Seidel and the other plaintiffs by relying on its policy's Errors and Omissions Exclusion (with Management Carveback). In Seidel, the Management Carveback was identical to the one in the Houston Policy in the present case. See id. at 223. The Court explained that "[t]he heart of this conflict rests in the proper reading of the Management Carveback," a clause that is included with the intention that some customer claims will be covered, specifically those that relate to management decision-making. Id. at 223-24.

Here, Shear, an Insured Person, is alleged to have approved the acts complained of in his position as Chief Compliance Officer of Carlin. Such an allegation makes Shear's activities "in connection with the management or supervision of" Carlin and thus within the Management Carveback. Also, Chief Compliance Officer is a managerial or supervisory position, and, to the extent that the Regensberg Complaint alleges that Shear approved the acts in question at Generic, neither "division" nor "group" is defined in the Houston Policy. Based on the cross-ownership between and among Carlin, Generic and Shear Offman, those entities can be considered part of the Carlin "group." At the least, as noted above, any ambiguity within the policy should be resolved in favor of the insured, and the words "division" and "group" are clearly ambiguous within the Houston Policy.

*8 Defendant Motschwiller, while admittedly an employee of Carlin, is not alleged or admitted to be an officer or director of Carlin and thus is not covered by the Management Carveback.

Conclusion

For the reasons stated above, Plaintiff's motion for partial summary judgment [dkt. no. 21] is granted with respect to Plaintiffs Carlin and Shear, and denied with respect to Plaintiffs Motschwiller, Generic Trading and Shear Offman.

Counsel shall confer and inform the Court by letter no later than September 14 how they propose to proceed.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy  
**(Cite as: 2007 WL 2456958, \*8 (S.D.N.Y.))**

Page 9

SO ORDERED.

2007 WL 2456958 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw

# Tab 2

LEXSEE 2006 U.S. DIST LEXIS 17597

**G-I HOLDINGS INC. and SAMUEL J. HEYMAN, Plaintiffs, v. RELIANCE INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY, and TWIN CITY FIRE INSURANCE COMPANY, Defendants.**

Civil Action No. 00-CV-6189 (DMC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2006 U.S. Dist. LEXIS 17597

March 22, 2006, Decided

**NOTICE:** [*1] NOT FOR PUBLICATION

**SUBSEQUENT HISTORY:** Reconsideration denied by *G-I Holdings, Inc. v. Reliance Ins. Co., 2006 U.S. Dist. LEXIS 45272 (D.N.J., June 29, 2006)*

**PRIOR HISTORY:** *G-I Holdings, Inc. v. Reliance Ins. Co., 2004 U.S. Dist. LEXIS 29592 (D.N.J., Mar. 23, 2004)*

**COUNSEL:** For GAF CORPORATION, SAMUEL J. HEYMAN, Plaintiffs: ANTHONY BARTELL, MCCARTER & ENGLISH, LLP, NEWARK, NJ.

For RELIANCE INSURANCE COMPANY, Defendant: ANTHONY J. LAPORTA, WHITE & WILLIAMS, LLP, PARAMUS, NJ; BRIAN R. ADE, BONNER, KIERNAN, TREBACH & CROCIATA, ESQS., PARSIPPANY, NJ.

For GREAT AMERICAN INSURANCE COMPANY, Defendant: RAYMOND A. KRESGE, KLETT LIEBER ROONEY & SCHORLING, A PROFESSIONAL CORPORATION, NEWARK, NJ.

For HARTFORD FIRE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, Defendants: CELESTINE MONTAGUE, WHITE AND WILLIAMS LLP, CHERRY HILL, NJ.

For NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, Cross Claimant: PETER A. OLSEN, FRANCIS & BERRY, MORRISTOWN, NJ.

For HARTFORD FIRE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, Cross Defendants: CELESTINE MONTAGUE, WHITE AND WILLIAMS LLP, CHERRY HILL, NJ.

**JUDGES:** Dennis M. Cavanaugh, U.S.D.J.

**OPINION BY:** Dennis M. Cavanaugh

**OPINION**

*DENNIS M. CAVANAUGH, U.S.D.J.:*

This matter comes before the Court upon motion by Plaintiffs G-I Holdings Inc. and Samuel J. Heyman ("Plaintiffs") for advancement of defense costs. Pursuant to this Court's Order of June 1, 2005, the parties [*2] in the instant action have submitted additional briefing on the issue of Defendant Hartford's duty to advance defense costs to Plaintiffs under the separate Hartford D&O policy. After carefully considering the submissions of the parties and based upon the following, it is the finding of this Court that Plaintiffs' demand for advancement of defense costs is **granted.**

**I. BACKGROUND** [1]

1 A recitation of the full background of this complex matter is unnecessary here and can be found in this Court's March 23, 2004 Opinion denying summary judgment. *See G-I Holdings Inc. and Samuel Heyman v. Reliance Ins. Co. et al., 2004 U.S. Dist. LEXIS 29592, Civil Action No. 00-6189 (D.N.J. Mar. 23, 2004).*

  

On January 2, 2003, Plaintiffs filed a motion for summary judgment seeking, among other relief, a declaration that they are entitled to the advancement of the costs of defending certain pending fraudulent conveyance and tort actions against them in other courts. Plaintiffs assert their entitlement to such funds pursuant to directors' [*3] and officers' ("D&O") insurance policies issued by Defendants Reliance Insurance Company ("Reliance"), assumed by Hartford Insurance Company and Twin City Fire Insurance Company, a wholly owned subsidiary of Hartford Insurance Company, (collectively "Hartford"), and issued by Great American Insurance Company ("Great American"). [2] This Court denied Plaintiffs' summary judgment motion in an Opinion and Order dated March 23, 2004. On April 8, 2004, Plaintiffs filed a motion for reconsideration of the Court's Order pursuant to *Local Civil Rule 7.1(g)*. This Court denied the motion to reconsider in an Opinion and Order dated June 29, 2004. Plaintiffs filed a motion for certification for appeal on September 20, 2004, which this Court denied on June 1, 2005. In that same Opinion and Order the Court ordered the parties to submit further briefing regarding the discrete issue of advancing of defense costs under the Hartford D&O Policy.

> 2   Reliance entered statutory liquidation proceedings in the Commonwealth of Pennsylvania after the initial filing of this action, and Plaintiffs have agreed to pursue their claims against Reliance in those proceedings.

[*4] **II. DISCUSSION**

Plaintiffs argue that Hartford bears an immediate obligation to advance Plaintiffs' defense costs pursuant to the language of the D&O policy issued by Hartford ("the Hartford policy" or "Policy"). Relying on prior rulings of this Court and other case law, Plaintiffs advance the theory that the Hartford Policy potentially provides coverage for the underlying "Creditors Committee Action" (captioned *Official Committee of Asbestos Claimants of G-I Holdings, Inc. v. Samuel J. Heyman*, 01-8529). Hartford contests Plaintiffs' assertions, arguing that because this Court has yet to resolve whether the underlying allegations implicate the Policy, a declaration regarding the existence of a duty to advance defense costs is premature. This Court agrees with the legal reasoning advanced by Plaintiffs.

Plaintiffs cite a number of cases for the proposition that defense costs must be advanced, including *Little v. MGIC Indemnity Corp.*, 836 F.2d 789, 794 (3d Cir. 1987); *Associated Electric & Gas Ins. Services, Ltd. et al. v. Rigas et al.*, 382 F. Supp. 2d 685, 691, 2004 WL 540451, *13 (E.D.Pa. 2004); *Federal Ins. Co. v. Tyco Int'l Ltd.*, 2 Misc. 3d 1006A, 784 N.Y.S.2d 920, 2004 WL 583829, [*5] *6 (N.Y.Sup. 2004); *Brown et al. v. American International Group, Inc. et al.*, 339 F. Supp. 2d 336, 2004 U.S. Dist. LEXIS 20969 (D.Mass. Oct. 19, 2004); *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 467, 2005 U.S. Dist. LEXIS 1466, *28 (S.D.N.Y. 2005). Defendants however maintain that these cases can be distinguished from the instant action because contrary to Plaintiffs' assertions, this Court has yet to make a determination that the underlying claims suggest a reasonable potential for coverage.

The Hartford Policy provides in Section I, Insuring Agreements:

> (A) DIRECTORS AND OFFICERS' LIABILITY
>
> Except for **Loss** which the Insurer pays pursuant to Insuring Agreement (B) of this Policy, the Insurer will pay on behalf of the **Directors** and **Officers Loss** which the **Directors** and **Officers** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period**...against the **Directors** and **Officers** for a **Wrongful Act** which takes place during or prior to the **Policy Period.**

(See Cert. of Anthony Bartell, Ex. B, pg 1)(emphasis in original). In *Little*, the Third Circuit examined [*6] a D&O policy substantially similar to the Hartford policy at issue. 836 F.2d 789, 792-3. The Third Circuit found the phrase "legally obligated to pay" in the policy's coverage provisions meant that the insurer's duty to pay defense costs arises contemporaneously with the director or officer's obligation to pay those costs. *Id.* at 793. The *Little* Court further held that the insurer was required to advance the policyholder's defense costs subject to reimbursement should it be found that the claims were excluded from policy coverage. *Id.* at 796.

Thus, a general reading of the policy indicates that Hartford is required to advance defense costs. However, the Hartford Policy is structured so that it begins with a general descriptions of coverage, followed by exclusions.

  

Defendants argue that various exclusions operate to bar the potential the underlying claims will be covered. Specifically, Defendants direct this Court's attention to the pollution exclusion in Section V(E), which they claim operates as a bar to coverage as a matter of law. Defendants further argue that Defendants have not alleged an insurable "loss" under the policy and [*7] that the claim was not made during the policy period.

The Court is aware of Defendants concerns that the Policy will eventually be adjudicated by way of this action to exclude coverage for the underlying claims. However, an insurer's duty to defend is determined by comparing the allegations in the underlying complaint with the language of the policy at issue. See *Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 173-4, 607 A.2d 1255 (1992)* (citing *Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677, (1954))*. Here, the Court has already found that there is a potential for coverage should the alleged facts be proven true. (See Opinion, March 23, 2004, pg 22.). Although certain ambiguities exist regarding the relevant policy period, and the applicability of the pollution provision, this Court is bound to resolve "any ambiguities...in favor of the policyholders." *See, e.g. Atlantic Employers Ins. Co. v. Chartwell Manor, 280 N.J. Super 457, 464-65, 655 A.2d 954 (App. Div. 1995); Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group, 232 N.J.Super. 467, 470, 557 A.2d 693 (App.Div.1989)*. Moreover, should it later be adjudicated [*8] that the policy does not apply to the underlying allegations, the Policy specifically provides for the insurer to be reimbursed. [3]

---

3  See Section III "Insurer shall advance on behalf of the Insureds Claims Expenses which **Directors** and **Officers**...have incurred in connection with **Claims** made against them, prior to disposition of such Claims, provided always that to the extent it is finally established that any such Claims Expenses are not covered under this Policy, the Insureds, as appropriate, agree to repay the Insurer such non-covered Claims Expenses."

---

In light of the above, it is the finding of this Court that Defendants have a obligation to advance defense costs to Plaintiffs in the underlying actions subject to the final outcome of the instant action. As such, Plaintiffs motion to compel is granted.

### III. *CONCLUSION*

Plaintiffs' motion to compel advancement of defense costs is **granted.** An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: [*9] March 23, 2006

### ORDER

This matter coming before the Court upon motion by Plaintiffs G-I Holdings Inc. and Samuel J. Heyman ("Plaintiffs") to compel the advancement of defense costs by Defendants Hartford Fire Insurance Company under the Hartford D&O policy; the Court having carefully considered the submissions of all parties; and for the reasons stated in the Court's Opinion issued on this day;

IT IS on this 23rd day of March, 2006,

ORDERED that Plaintiffs' motion to compel advancement of defense costs to Plaintiffs under the Hartford D&O policy is **granted.**

Dennis M. Cavanaugh, U.S.D.J.

Date: March 22, 2006

  

# Tab 3

Case 1:07-cv-09420-GEL   Document 9-2   Filed 12/21/2007   Page 16 of 19

BAKER & HOSTETLER, LLP
John J. Carney, Bar No. 02569-1990
666 Fifth Avenue
New York, NY 10103
Telephone:  212-589-4200
Facsimile:  212-589-4201

Helen B. Kim (admitted pro hac vice)
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone:  213-975-1611
Facsimile:  213-975-1740

*Attorneys for Plaintiffs*
*Dennis Klejna and Joseph Murphy*

COPY

FILED
AUG 0 3 2007
JOSEPH CHARLES, JR., J.S.C.

FILED
AUG - 3 2007
JOSEPH CHARLES, JR., J.S.C.

| | |
|---|---|
| JOSEPH MURPHY and DENNIS KLEJNA,<br><br>                   Plaintiffs,<br><br>vs.<br><br>LEXINGTON INSURANCE COMPANY;<br>PHILLIP R. BENNETT, LEO R. BREITMAN,<br>NATHAN GANTCHER, TONE N. GRANT,<br>DAVID V. HARKINS, SCOTT L. JAECKEL,<br>THOMAS H. LEE, RONALD L. O'KELLEY,<br>SANTO C. MAGGIO, PHILIP SILVERMAN,<br>SCOTT A. SCHOEN, WILLIAM M. SEXTON,<br>GERALD SHERER, ROBERT C. TROSTEN;<br>and DOES 1 through 20, inclusive,<br><br>                  Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br>CIVIL ACTION<br>DOCKET NO. L-5004-06<br><br><br>[PROPOSED] ORDER |

THIS MATTER having been opened to the Court on motion by Baker & Hostetler LLP, counsel for Plaintiffs Joseph Murphy and Dennis Klejna, seeking entry of an order granting summary judgment to the Plaintiffs; upon notice to Tompkins McGuire, Wachenfeld & Barry, attorneys for defendant Lexington Insurance Company ("Lexington") and the Court having

considered the Stipulation of Facts and Law submitted by the parties; and good cause having been shown:

IT IS on this __3rd__ day of August 2007, that the Court hereby determines:

1. The Lexington Excess Policy is ambiguous on its face as to whether the Lexington Excess Policy covers Defense Costs.

2. Under both New York and New Jersey law, any ambiguity in an insurance contract is construed against the insurer and in favor of coverage. *See Tonkin v. California Ins. Co. of San Francisco*, 294 N.Y. 326, 328-29 (1945) ("if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company") (1945) (citation omitted); *Araya v. Farm Family Casualty Ins. Co.*, 353 N.J. Super. 203, 210 (2002) (citation omitted).

3. New Jersey courts have applied this principle of contract interpretation to hold that when there is an ambiguity between the declarations page and the policy, the declarations page controls. *See Araya v. Farm Family Casualty Ins. Co.*, 353 N.J. Super. 203, 209 (2002) ("reasonable expectations of coverage raised in the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself so warns the insured") (quoting at 210 *Lehrhoff v. Aetna Casualty & Surety Co.*, 271 N.J. Super. 340, 346-47 (App. Div. 1994)).

4. Based on the foregoing, this Court determines the Lexington Excess Policy covers defense costs and fees.

IT IS ORDERED that Plaintiffs' motion seeking summary judgment is hereby GRANTED; and it is

FURTHER ORDERED that the Plaintiffs will present their bills to Lexington by August 1, 2007. If the Court enters an Order in Plaintiffs' favor before September 7, 2007, then Lexington will pay those bills less any deductions for any unreasonable fees and any fees not reasonably related to the *Murphy* and federal bankruptcy motions within 30 days after the entry of this Court's Order in the Plaintiffs' favor or by September 14, 2007, whichever of those two dates is the earliest. If the Court enters an Order in favor of Plaintiffs on or after September 7,

2007, then Lexington shall have up to but not more than 14 days from the date the Court issues the Order to make payment; and it is

FURTHER ORDERED that in the event Lexington disallows any legal fees or costs and Plaintiffs disagree with Lexington's position, Plaintiffs will submit the bills to the Court for a binding determination on the reasonableness of the fees under Rules 4:42-9 and 4:42-8; and it is

FURTHER ORDERED that a copy of this Order shall be served upon Lexington's counsel within seven (7) days of the date hereof.

IT IS SO ORDERED:

_____
Hon. Joseph Charles, Jr.