**Wayne E. Borgeest**
**Joan M. Gilbride**
**Robert A. Benjamin**
**KAUFMAN BORGEEST & RYAN LLP**
**200 Summit Lake Dr**
**Valhalla, New York 10595**
**(914) 741-6100 (Telephone)**
**(914) 741-0025 (Facsimile)**
**wborgeest@kbrlaw.com**
**jgilbride@kbrlaw.com**
**rbenjamin@kbrlaw.com**

*Attorneys for Axis Reinsurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

AXIS REINSURANCE COMPANY,                :       No. 07-CV-07924-GEL

                Plaintiff,           :
   v.                                                                    :

PHILLIP R. BENNETT, et al.,                     :

                Defendants.      :

------------------------------------------------------------- X

In re                                                              :       Chapter 11

REFCO, INC., et al.,                                   :       Case No. 05-60006-RDD

                Debtors.          :       Jointly Administered

------------------------------------------------------------- X

AXIS REINSURANCE COMPANY,                :       Adv. Proc. No. 07-01712-RDD

                Plaintiff,           :
   v.                                                                    :

PHILLIP R. BENNETT, et al.,                     :

                Defendants.      :

------------------------------------------------------------- X

| | | |
|---|---|---|
| TONE N. GRANT, et al., | : | Adv. Proc. 07-02005-RDD |
| Plaintiffs, | : | |
| v. | : | |
| AXIS REINSURANCE COMPANY, | : | |
| Defendant. | : | |

------------------------------------------------------------------X

| | | |
|---|---|---|
| LEO R. BREITMAN, et al., | : | Adv. Proc. No. 07-02032-RDD |
| Plaintiffs, | : | |
| v. | : | |
| AXIS REINSURANCE COMPANY, | : | |
| Defendant. | : | |

------------------------------------------------------------------X

| | | |
|---|---|---|
| AXIS REINSURANCE COMPANY, | : | (1) No. 07-CV-09420-GEL |
| | : | (2) No. 07-CV-09842-GEL |
| Plaintiff, | : | (3) No. 07-CV-10302-GEL |
| v. | : | |
| PHILLIP R. BENNETT, et al., | : | |
| Defendants. | : | |

------------------------------------------------------------------X

| | | |
|---|---|---|
| TONE N. GRANT, et al., | : | No. 07-CV-09843-GEL |
| Plaintiffs, | : | |
| v. | : | |
| AXIS REINSURANCE COMPANY, | : | |
| Defendant. | : | |

------------------------------------------------------------------X

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

AXIS REINSURANCE COMPANY SEEKS A STAY OF THE BANKRUPTCY
COURT'S ORDER OF OCTOBER 19, 2007 WHICH WILL RESULT IN
RENDERING THE PENDING APPEAL MEANINGLESS..................................................1

STATEMENT OF THE FACTS...........................................................................................2

I.      BACKGROUND ON AXIS'S DENIAL OF REFCO'S CLAIM......................2

II.     SANTO MAGGIO'S GUILTY PLEA...............................................................3

ARGUMENT.........................................................................................................................4

I.      THE BANKRUPTCY COURT'S ADVANCEMENT ORDER SHOULD
BE STAYED PENDING A DECISION ON THE APPEAL..............................4

      A.    Axis Has a Strong Likelihood of Success on Appeal..............................5

      B.    Axis Will Suffer Irreparable Injury Absent a Stay.................................8

      C.    The Insureds Will Not Be Harmed by a Stay........................................10

      D.    The Issues in this Appeal Have Important Public Policy
           Dimensions...............................................................................................11

CONCLUSION....................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Ref Fuel Co. v. Res. Recycling, Inc.*, 722 N.Y.S.2d 570 (N.Y. 2001) .................... 12

*Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ......... 9

*Federal Insurance Company v. Kozlowski*, 792 N.Y.S.2d 397 (1st Dep't 2005) ............ 7

*Federated Strategic Income fund v. Mechala Group Jamaica Ltd.*,
1999 WL 993648 (S.D.N.Y. 1999) ................................................................................ 9

*Garden City Irrigation, Inc. v. Salamanca*, 7 Misc.3d 1014(A), 801 N.Y.S.2d 234
(N.Y. Sup. Ct. Apr. 18, 2005) ........................................................................................ 9

*In re Adelphia Communications Corp.*, 361 B.R. 337 (S.D.N.Y. 2007) ........................... 5

*Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002)) ............................................................ 5

*Phillip Bros. v. El Salto, S.A.*, 487 F. Supp. 91 (S.D.N.Y. 1980) ..................................... 9

*Servidone Constr. Co. v. Sec. Ins. Co.*, 477 N.E.2d 441 (N.Y. 1985) ............................ 12

*Those Certain Underwriters at Lloyd's v. Prof'l Underwriters Agency, Inc.*,
848 N.E.2d 597 (Ill. App. 2006) .................................................................................. 12

*U.S. Fidelity & Guar. Co. v. Copfer*, 400 N.E.2d 298 (N.Y. 1979) ............................... 12

## AXIS REINSURANCE COMPANY SEEKS A STAY OF THE BANKRUPTCY COURT'S ORDER OF OCTOBER 19, 2007 WHICH WILL RESULT IN RENDERING THE PENDING APPEAL MEANINGLESS

Axis Reinsurance Company ("Axis") files this motion to stay an Order entered on October 19, 2007 (the "Advancement Order") by the Bankruptcy Court in an adversary proceeding in the bankruptcy case for Refco, Inc. ("Refco").[1] Despite Axis's denial of coverage and without reaching the merits of Axis's substantive coverage defenses, the Bankruptcy Court granted the Insureds' motions for summary judgment and ordered Axis to advance the Defense Costs to the Insureds under a directors and officers liability insurance policy issued by Axis to Refco. An appeal of this Advancement Order is currently pending before this Court and was fully briefed on January 9, 2008. Axis seeks this immediate stay of the Bankruptcy Court's Advancement Order until the appeal is decided or, alternatively requests that the Court require the Insureds to post a bond to ensure that Axis will be able to recover the advanced Defense Costs in the event that Axis prevails on its appeal.

In addition to the arguments previously advanced before the Bankruptcy Court, recent events have occurred that further underscore the need for a stay pending the appeal. As discussed below, Santo C. Maggio, a former Refco executive and an Insured under the Policy, has pled guilty, admitting that he and other Insureds committed criminal fraud. If this Court does not issue an immediate stay of the Advancement Order, then any victory by Axis on the appeal will be hollow as no Court will have a realistic ability to make Axis whole again.

---

[1] The name "Refco," as used throughout this brief, refers to Refco, Inc., the publicly traded company formed pursuant to the August 2005 initial public offering, as well as to Refco Group Ltd., LLC, the company through which Refco's business was primarily conducted prior to the IPO. "Refco" also refers to subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

## STATEMENT OF THE FACTS

### I. BACKGROUND ON AXIS'S DENIAL OF REFCO'S CLAIM.

This Court has the appeal pending before it and is very familiar with the background of this case.[2] Briefly however, in October 2005, following the revelation that over a seven-year period, its former Chairman, President and Chief Executive Officer, Phillip Bennett, hid hundreds of million of dollars of uncollectible receivables, Refco announced that its prior financial statements could no longer be relied upon.[3] This announcement, just two months after going public and four months after obtaining the directors and officers liability policy at issue,[4] sparked dozens of civil and criminal actions against Refco and various Refco executives (the "Underlying Actions").

On March 6, 2006, Axis denied coverage under the Axis Policy to all insureds under the Axis Policy, including the Insureds,[5] for any claims arising out of Refco's demise on the following grounds: (1) breach of a January 21, 2005 Warranty Letter executed by Bennett on behalf of all Insureds under the Axis Policy; (2) the "Knowledge Exclusion" (Endorsement 6); (3) an Exclusion in the Application; and (4) the Pending and Prior Litigation Exclusion. *See* Exhibit A to the Declaration of Joan M. Gilbride,

---

[2] Axis refers this Court to the Appellate Brief pending before it for a more complete recitation of the facts and procedural posture and it incorporates that brief by reference herein.

[3] A detailed description of the Refco fraud can be found in the 363 page Examiner's Report (Bankr. S.D.N.Y. filed July 11, 2007) (05-60006, Doc. 5530). The Examiners Report recounts the detailed factual basis for the allegations of fraud against Bennett and others.

[4] Axis issued Securexcess Policy Number RNN 506300 (the "Axis Policy") to Refco with a policy period commencing August 11, 2005, in anticipation of Refco's late spring, early summer IPO in 2005. *See* Exhibit B to the Gilbride Stay Decl.

[5] The Insureds other than Refco, the individual directors and officers (herein "Individual Insureds") have divided themselves into four categories: (1) the "Officer Insureds" – Klejna, Murphy, Sexton, Sherer and Silverman; (2) the "Director Insureds" – Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley, and Schoen; (3) the "Indicted Insureds" – Bennett, Grant and Trosten; and (4) the "Cooperating Defendant" – Maggio (collectively "Insureds").

dated January 14, 2008 (hereinafter "Gilbride Stay Decl."). Axis concluded, based on the tacit public admissions in Refco's SEC filings, that Bennett and potentially certain other insureds did have such knowledge or information at the relevant times.

Following no response from the Insureds, in May 2007, Axis commenced a declaratory judgment action seeking a judicial declaration that, pursuant to these terms of the Axis Policy, conditions and exclusions, there is no coverage under the Axis Policy in connection with the Underlying Actions. Before Axis could even begin to present its case in support of its declaratory judgment action, the Bankruptcy Court for the Southern District of New York, dismissed Axis's declaratory judgment action in its Order of August 31, 2007 and permitted various Insureds to continue their counterclaims against Axis, and other Insureds to initiate their own proceedings, seeking to force Axis to advance Defense Costs. *See* Exhibit C to the Gilbride Stay Decl. Thereafter, on October 19, 2007, the Bankruptcy Court issued the Advancement Order, which granted the summary judgment motions of the Insureds, and ordered that Axis advance their Defense Costs until such time as the Axis Policy is exhausted or there is a final adjudication on the issue of whether the Underlying Actions are covered under the Policy. *See* Exhibit D to the Gilbride Stay Decl. It is from these actions of the Bankruptcy Court that the pending appeal is taken.

## II.    SANTO MAGGIO'S GUILTY PLEA

On December 19, 2007, Santo C. Maggio, a former senior Refco executive and an Insured under the Axis Policy, pleaded guilty before the United States District Court for the Southern District of New York to two counts of securities fraud, one count of conspiracy to commit securities fraud, and one count of wire fraud. The Information to

which Mr. Maggio allocuted, provides an overview of the sordid story of how Mr. Maggio along with his co-conspirators, Phillip R. Bennett, Tone N. Grant, and Robert C. Trosten, engaged in criminal fraud and deceit in their efforts to hide the true financial health of Refco. *See* Exhibit E to the Gilbride Stay Decl.

As further detailed in his plea and the Information, Mr. Maggio admitted that from the late 1990s to October 2000, he "participated with others to hide the true financial health of Refco from banks, counter-parties, auditors and investors." *See* Exhibit F to the Gilbride Stay Decl. at p. 17. He further admitted that "with my knowledge and active participation Refco's substantial losses were covered up as revenues padded [sic] and certain operating expenses were moved off its book." *See* Exhibit F to the Gilbride Stay Decl. at p. 18.

Mr. Maggio's guilty plea and his allocution to the fraud that was perpetrated with his coconspirators serves to underscore what Axis has been arguing all along – that this Claim is excluded from coverage under the Axis Policy and the Bankruptcy Court should not have ordered the advancement of Defense Costs where there is no coverage under the Policy.

## ARGUMENT

### I. THE BANKRUPTCY COURT'S ADVANCEMENT ORDER SHOULD BE STAYED PENDING A DECISION ON THE APPEAL

Axis easily satisfies the requirements for a stay of the Bankruptcy Court's Advancement Order. A Court considers four factors in determining whether to grant a stay pending appeal under Federal Rule of Bankruptcy Procedure 8005: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a

4

substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *In re Adelphia Communications Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007). The decision to grant the stay involves a balancing of the four factors, wherein a stronger showing on one factor may excuse a lesser showing on another. *Id.* at 347 (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)). Axis passes this test with flying colors.

### A.   Axis Has a Strong Likelihood of Success on Appeal.

Although not strictly necessary to obtain a stay, Axis can demonstrate a <u>substantial</u> likelihood of success on the merits of its appeal.

Axis argues in its appeal that the Bankruptcy Court's retention of the Insureds' counterclaims and grant of permission to initiate adversarial proceedings on the advancement issue, while dismissing Axis's complaint on the same issue, was imprudent and caused great injury and injustice to Axis. Once the Bankruptcy Court dismissed Axis's Complaint it should have also dismissed the Insureds' counterclaims.

Given the admissions made by Refco and Mr. Maggio, Axis's position is stronger than ever that the Axis Policy does not afford coverage to the Insureds. As stated more fully in the appeal, the reason Axis denied coverage in its March 6, 2006 correspondence to the Insureds is simple. In three separate and distinct documents, Refco warranted to Axis that if any of the directors and officers of Refco knew of anything which might result in a Claim under the Policy, that Claim would be excluded from coverage for all Insureds.[6] These provisions are each part of the Axis Policy and none of these provisions

---

[6] The purpose of these provisions was to ensure that the Policy, which incepted on the same day as the Refco IPO, would only provide coverage from the IPO forward. In other words, the intent was to start with a clean slate.

5

require a "final adjudication" or "in-fact" finding. Axis reviewed the many lawsuits submitted for coverage arising out of Refco's demise, Refco's filings with the SEC regarding the active participation in the fraud by Bennett, and, on March 6, 2006, denied coverage based, in part, on these three provisions. *See* Exhibit A to the Gilbride Stay Decl.

Now, in addition to the above considerations, on December 19, 2007, Mr. Maggio, an Insured under the Axis Policy, pleaded guilty to – among several other things – securities fraud – and admitted to knowledge of the fraud at Refco prior to the underwriting of the Axis Policy. *See* Exhibits E and F to the Gilbride Stay Decl. To the extent that there ever was any dispute as to the facts upon which Axis based its coverage disclaimer – and Axis contends there never was any such dispute – Mr. Maggio's guilty plea puts any possible dispute to rest. One of the Insureds has now admitted that he, and others (including Bennett, Trosten, and Grant), conspired to defraud banks, counterparties, auditors and investors. There can be no doubt that these Insureds knew that their actions, if discovered by the public, would result in a Claim under the Axis Policy. This is precisely the situation that Axis contracted to exclude from coverage. Three separate provisions provide that Axis does not have to do the very thing that the Bankruptcy Court has ordered – pay for a Claim based on things the Insureds knew about before the IPO. It is now beyond cavil that the Claim is excluded from coverage.

The plain terms of the Axis Policy provide only for payment of **_covered_** Defense Costs. The Axis Policy requires that Axis make the initial determination of whether or not something is covered. Furthermore, the policy terms do not impose upon Axis a duty to defend such as may be found in other types of liability insurance. In fact, the Axis Policy provides that "[t]he Insurer will have no duty under the Policy to defend any

6

Claim. The Insureds must defend any Claim made against them." *See* Exhibit G to the Gilbride Stay Decl. at p. 8, Condition D(1).

Condition D(2) provides for the payment of "covered Defense Costs on an as-incurred basis." *See* Exhibit G to the Gilbride Stay Decl. Defense Costs is a defined term – meaning costs incurred in connection with the defense of a Claim. The exclusions in the Warranty, the Knowledge Endorsement, and the Application all mandate that the Axis Policy does not respond to this Claim. Since the Axis Policy does not provide coverage for this Claim, costs incurred in defense of these matters are not Defense Costs incurred in defense of a Claim covered by the Axis Policy. *Federal Insurance Company v. Kozlowski*, 792 N.Y.S.2d 397, 404 (1st Dep't 2005) (holding no duty to pay Defense Costs where the claim is excluded from coverage). Based on the express Policy terms, Axis, having reasonably denied coverage, is not obligated to advance any Defense Costs unless or until the Insureds are able to establish that Axis's denial of coverage was incorrect.

The Bankruptcy Court's bifurcation of the coverage and advancement issues put the cart before the horse. Without coverage, there can not be any advancement requirement under the Policy.[7] The Bankruptcy Court ignored this analytical process and jumped right over "coverage" to get to the advancement issue. This is precisely the flaw in the Bankruptcy Court's logic. Cases cited by the Insureds and relied upon by the Bankruptcy Court either deal with rescission, which is not at issue in this case, or are based on exclusions which cannot, by their express terms, be triggered without a future event – final adjudication. The Axis Policy is materially different from the policies at

---

[7] Counsel to the Insureds already admitted that "you really can't litigate [the advancement issue] in the abstract by itself without the coverage under the policy also being in dispute." 8/30 Tr. at p. 11; *See* Exhibit H to the Gilbride Stay Decl.

7

issue in these other cases. The Axis Policy only requires the advancement of "covered Defense Costs" and the exclusions relied upon by Axis are immediately applicable.

### B.     Axis Will Suffer Irreparable Injury Absent a Stay.

It cannot be disputed that Axis will suffer irreparable injury if it is forced to provide the Insureds with extra contractual, gratuitous coverage — *i.e.*, coverage that was never contracted for under the terms of the Axis Policy. That injury is compounded by the fact that, here, once the payments have been made, Axis will have no practical ability to recover the amounts paid. Because the Insureds will incur further Defense Costs and, potentially, the cost of settlements or judgments in the underlying lawsuits, Axis is likely to have no ability to recoup the amounts it advances.

The Advancement Order of the Bankruptcy Court requires Axis to advance Defense Costs to the Insureds until such time as Axis receives a favorable adjudication of coverage under the Policy, or the $10 million Limit of Liability is exhausted by the defense cost payments subject to the Order. *See* Exhibit D to the Gilbride Stay Decl. Axis appealed this Order to the District Court and it was fully briefed on January 9, 2007. During the pendency of this appeal, Axis has been complying with the Order and has paid a total of over $7 million in Defense Costs to the Insureds. Of this amount, over $5 million has been paid towards the defense of the Indicted Insureds, over $1.3 million has been paid towards the defense of the Officer Insureds, and over $737,000 has been paid towards the defense of the Director Insureds. At this time, Axis has paid over $7 million of its $10 million Limit of Liability, with over 70% of that payment going towards the Indicted Insureds – the very same individuals who have now been implicated as

8

coconspirators in Mr. Maggio's guilty plea. *See* the Affidavit of Harold Neher, dated January 14, 2008 (hereinafter "Neher Aff.") at ¶ 4.

While in some cases monetary damages may be determinable and compensated for by a Court judgment, thus precluding irreparable harm, the Courts have found that circumstances may exist such that irreparable harm may arise from monetary damages. As the Second Circuit Court has stated a "more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action that the parties cannot be returned to the positions they previously occupied." *Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). *See* also *Federated Strategic Income fund v. Mechala Group Jamaica Ltd.*, 1999 WL 993648 (S.D.N.Y. 1999) (Plaintiffs' inability to recover any monetary damages due to defendant's threatened insolvency justified a finding of irreparable harm); *Phillip Bros. v. El Salto, S.A.*, 487 F. Supp. 91, 95 (S.D.N.Y. 1980) (movant demonstrated irreparable harm where movant "might encounter difficulty collecting a money judgment"); *Garden City Irrigation, Inc. v. Salamanca*, 7 Misc.3d 1014(A), 801 N.Y.S.2d 234 (N.Y. Sup. Ct. Apr. 18, 2005) (recognizing irreparable injury results where party is unable to enforce a judgment and entering preliminary injunction to avoid transfer of assets).

In the instant case, Axis should not be penalized by its present inability to detail the specifics of the Insureds' financial wherewithal. Despite Axis's arguments to the Bankruptcy Court during an earlier application of the Insureds for an injunction, in which Axis argued that the preliminary injunction analysis required the Insureds to make a showing that they would be able to repay Axis if it were determined that Axis in fact had no obligation to advance Defense Costs, the Insureds refused to make such a showing,

9

and the Bankruptcy Court did not require it. Despite repeated opportunities, the Insureds have steadfastly refused to offer any evidence whatsoever about their economic circumstances. Thus, although the Axis Policy provides for repayment of Defense Costs, the Insureds have steadfastly refused to provide any representation that they can and will comply with this provision. Indeed, the amounts at issue and the circumstances that the Insureds face (i.e., ongoing civil and criminal litigation that currently is in discovery) normally would make the prospect of repayment highly unlikely. *See* Neher Aff. at ¶ 5.

Thus, if the requested stay is not granted, Axis will be denied a remedy even if it prevails on its appeal, rendering its appeal irrelevant. The "loss of appellate rights is a quintessential form of prejudice. Thus, where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." *Adelphia*, at 361 B.R. at 348. An appeal is moot when "during the pendency of an appeal, events occur that would prevent the appellate court from fashioning effective relief." The only meaningful remedy is to grant Axis a stay of the Advancement Order.

### C.   The Insureds Will Not Be Harmed by a Stay.

The Insureds will not be harmed by a stay of the Advancement Order. This dispute concerns payment of law firm invoices. It is certainly not uncommon for law firms to bill clients on bi-monthly or even quarterly schedules. The Insureds have never made the slightest showing or offered a shred of evidence to the Bankruptcy Court that a delay in payment of the invoices would disrupt their defense efforts or arrangements. Indeed, despite being given repeated opportunities to do so, the Insureds have steadfastly refused to offer any evidence whatsoever about their economic circumstances. If the

10

Insureds are going to claim some perceived "irreparable harm" let them lay bare their evidence before this Court so that it may be weighed and measured by the judicial standards that should be applicable to all parties.

Moreover, the length of the stay necessary to resolve this appeal should be very short. The issues have already been fully briefed and the matter is pending before the Court. Accordingly, there is no harm to the Insureds in permitting this brief stay. However, there is irreparable harm to Axis in being denied even the shortest of stays while the Court reviews the appeal.

### D.    The Issues in this Appeal Have Important Public Policy Dimensions.

No public policy is served by gifting the Insureds millions of dollars to reward them for successfully defrauding their Insurer. As discussed above, it has been admitted by one Insured that he and his coconspirators knew that they were engaging in securities fraud when they contracted with Axis for D&O insurance. By granting advancement under these circumstances, and under the terms of the Axis Policy, the Bankruptcy Court rewarded these Insureds.

In this case, the Insureds requested, and the Bankruptcy Court granted, an order that Axis advance Defense Costs despite the fact that: (1) the Axis Policy requires Axis to advance only *covered* Defense Costs on an as-incurred basis; (2) Axis had denied coverage based on clear policy exclusions; and (3) there has been no determination that Axis's denial of coverage was wrongful. Recent events such as the Maggio guilty plea confirm that there is no coverage for this Claim under the Axis Policy.

Furthermore, the issues which the appeal will address, have the potential to overturn settled insurance law holding that an insurer has the discretion to deny coverage

for claims subject to the consequences that its coverage determination is held incorrect.[8] The Bankruptcy Court's ruling that insurers cannot exercise their policy exclusions until blessed by a Court would render those policy exclusions nugatory and mandate coverage litigation for virtually every disputed claim involving a director or officer. Accordingly, the pending appeal is significant to public interests beyond the parties to this dispute.

[Remainder of the page intentionally left blank]

---

[8] *Servidone Constr. Co. v. Sec. Ins. Co.*, 477 N.E.2d 441, 444 (N.Y. 1985) (insurer that wrongfully refuses to defend may lose right to consent to settlement); *Am. Ref Fuel Co. v. Res. Recycling, Inc.*, 722 N.Y.S.2d 570, 574 (N.Y. App. Div. 2001) (insurer that denies coverage loses right to insist on insured's cooperation); *U.S. Fidelity & Guar. Co. v. Copfer*, 400 N.E.2d 298 (N.Y. 1979) (insurer that breached duty to defend liable for compensatory damages); *Those Certain Underwriters at Lloyd's v. Prof'l Underwriters Agency, Inc.*, 848 N.E.2d 597, 603 (Ill. App. 2006) (rejecting insured's argument that allowing insurer to deny coverage without advancing Defense Costs gives insurer too much power in light of bad faith protections).

## CONCLUSION

For the reasons set forth above, Axis respectfully requests that the Court exercise its equitable power to lessen the irreparable harm to Axis by issuing an Order to (1) stay enforcement of the Bankruptcy Court's October 19, 2007 Advancement Order pending resolution of this appeal; or, in the alternative, (2) require the Insureds to post a security bond.

Dated: January 14, 2008

>Respectfully submitted,
>
>KAUFMAN BORGEEST & RYAN LLP
>
>By: _____
>Wayne E. Borgeest
>Joan M. Gilbride
>Robert A. Benjamin
>200 Summit Lake Drive
>Valhalla, New York 10595
>(914) 741-6100 (Telephone)
>(914) 741-0025 (Facsimile)
>wborgeest@kbrlaw.com
>jgilbride@kbrlaw.com
>rbenjamin@kbrlaw.com
>
>*Attorneys for Plaintiff Appellant*
>*Axis Reinsurance Company*